(No. 20983.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JACOB GREENSPAWN, Plaintiff in Error.

*Opinion filed December 17, 1931.*

LOUIS BLUMENTHAL, MICHAEL ROMANO, WILLIAM L. PIERCE, and DAVID D. MADDEN, (WM. SCOTT STEWART, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, WILLIAM D. KNIGHT, State's Attorney, JOHN P. MADDEN, and ALFRED B. LOUISON, for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Jacob Greenspawn was indicted in the circuit court of Winnebago county for the crime of forgery. He was tried by a jury, convicted and sentenced to imprisonment in the penitentiary, and he has sued out a writ of error.

The errors assigned are that the verdict is not supported by the evidence; that the court erred in the admission and rejection of evidence; in prejudicial remarks made on the trial; in the giving and refusing of instructions and in permitting the jury to seal their verdict and separate before its return into court. Complaint is also made of prejudicial conduct of the State's attorney in the trial.

The commission of the crime was proved. The forged instrument was a check for $1500 purporting to be drawn on the Commercial National Bank of Rockford, payable to the order of Edward Roth and signed by the Modern Se-

curities Corporation by Karl J. Mohr, president-secretary. It was presented on December 21, 1927, to the paying teller of the Commercial National Bank at the counter of the bank in Rockford. It bore the apparent indorsement of the payee and also the following indorsement, "O.K.—Karl J. Mohr." It was shown that both the signature of the maker and the indorsements were forgeries. The teller, not knowing the man who presented the check, conferred with the assistant cashier, who walked over to where the man who presented the check was standing, asked him some questions and afterward telephoned and made some inquiries about the check. In the meantime the man who presented the check went out of the bank and disappeared and was not again seen by either the teller or the assistant cashier until about a year later, when he was arrested in Chicago and identified by them.

The defendant testified that he had never been in Rockford before his arrest on this charge, had never seen the checks offered in evidence, did not have either of them in his possession on December 21, 1927, did not present either of them to the Commercial National Bank or to the Peoples Bank and Trust Company of Rockford, and was not in either of those banks on that day or at any other time; that he was twenty-nine years of age, was born in Chicago and had lived there all his life. He gave further testimony tending to show that on December 21, 1927, he was in Chicago from 10:30 A. M. to 1:30 P. M., so that he could not have been in Rockford at the time the attempt was made to pass the forged check. There was testimony corroborative of his testimony tending to establish the alibi.

When the prosecution closed its evidence the defendant offered in evidence a transcript of a record of the circuit court of Winnebago county in support of his claim of a former acquittal of the charge. His plea was not guilty, and under it he was entitled to prove any defense to the charge. The transcript showed an indictment returned at the Octo-

ber term, 1930, of the circuit court of Winnebago county, against this defendant for the crime of forgery in substantially the identical language of the indictment in the present case, except that the indictment in that case set out a check purporting to have been drawn on the Peoples Bank and Trust Company instead of the Commercial National Bank, as in the indictment in the present case. The transcript further showed that a plea of not guilty was entered by the defendant, a jury was impaneled and sworn to try the cause, and the State's attorney then moved the court to withdraw a juror, to which motion the defendant objected, but the court granted the motion and the defendant excepted. The prosecution objected to this evidence and the objection was sustained. This ruling was correct. It is necessary to the sufficiency of an indictment for forgery that it should set forth the instrument forged with strict verbal accuracy. The description of that instrument is an essential part of the description of the offense. (*People* v. *Tilden,* 242 Ill. 536.) An indictment for the forging of one instrument will not be sustained by proof of the forging of a different instrument. The rule is that where the facts charged in a second indictment would, if true, have secured a conviction on the first the defense is good. (*Durham* v. *People,* 4 Scam. 172; *Spears* v. *People,* 220 Ill. 72.) It is obvious that a check drawn on the Peoples Bank and Trust Company is not the same instrument as one drawn on the Commercial National Bank though the two are in all other respects identical, and that the evidence necessary to secure a conviction on one will not sustain a conviction on the other.

The testimony of the defendant in regard to the alibi was, that his name was Herbert Cashman, and on December 21, 1927, he was living at 830 Lakeside place, Chicago; that on December 19 he had a tooth-ache and went to the office of Dr. Denem, a dentist, at 4600 Broadway, which was three or four blocks from where the defendant lived, and that he gave his name to the doctor as Herbert Leh-

man. The doctor examined and treated his teeth and directed him to return at 10:30 A. M. on December 21. He went to the doctor's office at the appointed time and the doctor sent him to the American Hospital to have X-ray pictures made of his teeth and directed him to return at 1:00 o'clock of the same day. He went to the hospital as directed, the pictures were taken there by William L. Childers, the X-ray man, and they were developed and one set given to the defendant, who took them to Dr. Denem at a little before 1:00 o'clock. The dentist then extracted three teeth for the defendant, finishing at about 1:30, and the defendant went home.

The dentist, Harry Denem, testified at the trial in May, 1931: "I have known the defendant about four years since he became a patient of mine in 1927. I think that with refreshing my memory by my record I can name the specific date. I saw him first at 10:30 on December 19, 1927. I made the record in my handwriting at the time the appointment was made. The defendant appeared at my office at the time of the appointment and I found an infected tooth and opened and drained that tooth on that day. I should judge this took about a half hour. I made an appointment with him for the 21st day of December at 10:30 in the morning and I saw this defendant at that time at my office. He arrived approximately at 10:30 and remained about twenty minutes or a half hour. I gave the defendant the name of the American Hospital, which is located in Chicago at Irving Park boulevard and Broadway, which hospital has an X-ray in charge of Mr. William Childers, with whom I am acquainted. I saw the defendant again at 1:00 o'clock on the same day, December 21, 1927, at my office. At 1:00 on the 21st day of December, 1927, I extracted three teeth and made a record concerning that extraction in my handwriting. I have the record with me, which has been marked defendant's exhibit '3.' The items that appear on that record are true and correct and made

on the day referred to and on the same day that the operation was performed. The name 'Herbert Lehman' was given to me by the defendant in this case. The markings on that card signify cavities that were in those teeth at the time of the examination and tentative work to be done. Those marks were placed on there by me and represent the teeth of this defendant. I made those marks on that chart when he first presented himself at my office, which would be the 19th of December."

The dentist was examined with reference to the book from which he had refreshed his memory, and testified, in substance, that it was regularly kept in the course of his business, and that all his appointments and the dental work done by him were recorded in it in their regular sequence. The defendant offered to show by the dentist that on his return from the American Hospital the defendant brought X-ray pictures of his teeth, what three teeth were then pulled, whether the dentist saw the defendant on the 22d and 23d, and to introduce in evidence the X-ray pictures and the book kept by him as a record of his professional transactions which he had used to refresh his memory. The court sustained objections to all this evidence, and, it is contended, erred in doing so.

A similar objection was made to the testimony of William L. Childers, who made the X-ray pictures at the hospital. After refreshing his memory by the hospital record which was kept by him in regard to the particular transaction, he testified about the visit of the defendant to the hospital on December 21, 1927; that Childers then made a series of eleven X-ray exposures of his teeth, each exposure resulting in duplicate X-ray films or pictures, one set of which he gave to the defendant for the use of Dr. Denem and the other was kept among the hospital records. He identified these pictures at the trial. The hospital record of this transaction was made on December 21, 1927, in his own handwriting, by Childers, who testified that it was a

correct record. He had no independent recollection of the time when he first met the defendant, but he testified that an examination of the record refreshed his recollection, and he could now say that the occasion of his first meeting the defendant was on December 21, 1927, between 9:00 A. M. and 1:00 P. M. at the American Hospital in the X-ray laboratory, and that he then made an X-ray examination of all the teeth in the defendant's mouth, occupying possibly ten minutes, and took eleven strips of film in duplicate, one set of which was sent to Dr. Denem by the defendant. An objection was made by the State's attorney to this last statement, and the court remarked: "Unless he can recollect, the witness should not answer. Are you just simply referring to that or do you have any recollection?" The witness answered, "I have a distinct recollection, your honor, because of the circumstances surrounding the particular instance." The objection was thereupon overruled. The State's attorney on cross-examination of the witness asked him if he ever took any X-ray pictures of the defendant in 1930, and he answered that he did take X-ray pictures of the defendant's teeth in November, 1930—of all the teeth in his mouth—eleven films. Those pictures were made in 1930 at the suggestion of Blumenthal, one of the defendant's attorneys. The films were present at the trial, on the trial table. On re-direct examination Childers was asked whether he was ever asked to make a comparison of those films, and an objection to the question was sustained. An objection was also sustained to the question whether the films taken in 1930 were photographs of the mouth of the defendant taken in 1927. Counsel for the defendant called to the court's attention that the State's attorney brought out on cross-examination the matter of these second pictures, but the court adhered to his ruling. The State's attorney on re-cross-examination asked, "Apart from this record you have no independent recollection that this defendant was the person who was there on December 21,

1927?" The answer was, "No, sir," and the State's attorney moved that all the witness' testimony be stricken, and the motion was overruled. Counsel for the defendant asked Childers if he was able by comparing X-ray films to determine whether or not they were of one and the same person, and an objection was sustained. Counsel then offered to prove that by a comparison of the X-rays made by the witness in 1927 with X-rays of the defendant's mouth made in 1930, because of his expert knowledge as an X-ray technician, the witness could state positively "that the man whom he X-rayed in November, 1930, compared with the plates of the man whom he X-rayed December 21, 1927, are one and the same person," but the court sustained an objection to this offer, and at the conclusion of Childers' testimony, on motion of the State's attorney, excluded it all and directed the jury that the testimony was stricken and the jury should disregard it.

It is argued that the dentist's record kept by him in regard to his business, the work done and the time were admissible in evidence and it was error to refuse to admit them. The records were not of themselves competent evidence of the facts stated in them, although they were of such a character that the doctor might make use of them to refresh his memory. This, however, did not make them competent to be received as original evidence. The X-ray pictures should have been received. In connection with the dentist's statement that he had sent the defendant to the American Hospital to have the X-ray examination made, and the testimony of Childers, the technician, in reference to the examination and sending the pictures back to the dentist by the defendant, they tended to sustain the defendant's alibi.

The court clearly erred in striking out all of Childers' testimony and directing the jury to disregard it. While the rule is that a witness can testify only to such facts as are within his knowledge and recollection, he may refresh

and assist his memory by the use of a written instrument, memorandum or entry in a book, and it is not necessary that the writing should have been made by the witness himself, or that it should have been an original writing, or that it should itself be admissible in evidence, provided that after inspecting the record the witness can speak to the facts from his own recollection. (*Scovill Manf. Co.* v. *Cassidy*, 275 Ill. 462; *Walsh* v. *Chicago Railways Co.* 303 id. 339; *Diamond Glue Co.* v. *Wietzychowski*, 227 id. 338.) Undoubtedly, Childers might refresh his memory from the memorandum which he had himself written in the record of the hospital, and if after doing so he had no independent recollection of the facts mentioned in it but remembered that at the time he made it he knew its contents were correct it was competent to read the record in evidence. All of his evidence was not incompetent even if it be admitted that the evidence in regard to the making of the X-ray examination on December 21, 1927, is incompetent. He testified positively, from his recollection, to making the X-ray examination in 1930, and offered to show that by comparing the pictures then taken with those taken on December 21, 1927, he could identify the person who was the subject of both examinations as the same person. Dr. Denem testified he sent defendant to the American Hospital, of which Childers was the X-ray technician, to have X-rays of his teeth made and in a short time he returned with the X-ray pictures. The records of the hospital kept by Childers showed that on that same day he made X-ray pictures of a man sent to him by Dr. Denem and sent the pictures by the patient to Dr. Denem. Then, two or three years later, he took X-ray pictures of the defendant, and proof was offered to be made that the pictures taken of the defendant were of the same man of whom the pictures were taken on December 21, 1927. This evidence all tended to prove the alibi and it was error to reject it. A memorandum made by a witness at the time

of the transaction, in the usual course of business, may be referred to by the witness to refresh his memory. Whether it may be received in evidence in connection with the testimony of the witness who made it and testifies that the facts were correctly stated in it at the time is a question upon which the authorities are conflicting. It has been held that where a writing has been made by the witness at the time of the fact, for the purpose of preserving the memory of it, if at the time of testifying he can recollect nothing further than that he had accurately reduced the whole transaction to writing, the writing itself may be admitted in evidence to go to the jury. (*Farmers' and Mechanics' Bank* v. *Boraef,* 1 Rawle, 152; *Smith* v. *Lane,* 12 S. & R. 84; *Merrill* v. *Ithaca and Oswego Railroad Co.* 16 Wend. 586; *Haven* v. *Wendell,* 11 N. H. 112; *Curtis* v. *Bradley,* 65 Conn. 99; *State* v. *Brady,* 100 Iowa, 191; *Republic Fire Ins. Co.* v. *Weides,* 14 Wall. 375.) The language of the witness leaves it doubtful whether he intended to say that he had no recollection of the event or whether he had any recollection of the event, or whether it was of the date, only, that he had no recollection, or that it was of the identity of the defendant; but if it is construed that he had no recollection except that he made a true record of whatever did occur, then that record is entitled to be admitted in evidence. If, on the other hand, he had, as he stated in one part of his examination, a distinct recollection because of the circumstances surrounding the particular instance, then his testimony on the question should have been received and the record was not admissible.

On the trial evidence was introduced that on December 21, 1927, after 12:00 o'clock, a check similar in all respects to that which was described in the indictment in this case except that it was drawn on the Peoples Bank and Trust Company, was presented for payment at that bank and was paid. The assistant cashier, who paid the check in currency, testified that afterward he saw at the

lock-up on State street, in Chicago, a man who closely resembled the man who cashed the check, and he then saw in the room the man he saw in Chicago, who is the defendant. In answer to the question on cross-examination, "Can you now state positively that the man you saw in the Peoples Bank on the 21st day of December, 1927, is the defendant at the bar?" the witness said he would not go as far as that. Reuben Olson, a teller at the Peoples Bank and Trust Company on December 21, 1927, testified that he was in the cage with Carl A. Sodergren between 12:00 and 1:00 o'clock when Sodergren paid three 500-dollar packages to someone who presented a check; that he got a sort of view of the man from the rear, and, when he turned, a sort of profile. Being asked if he could state whether or not the defendant was the man whom he saw there he said that was not the man. The rule under which proof of the possession or passing of other forged paper is permitted on a trial requires that the instrument must be shown by strict proof to have been forged, and that the possession or uttering of the spurious paper be shown to be so near to the commission of the alleged offense in point of time or circumstances that the inference arises that the defendant must have intended to perpetrate a fraud by the particular forgery charged or knew that the instrument uttered was spurious. (*Anson* v. *People,* 148 Ill. 494; *People* v. *Ernst,* 306 id. 452.) The check cashed at the Peoples Bank and Trust Company was shown to be forged and the time was approximately the same as the time of the act charged in this indictment. The identification of the defendant as the man who presented the check to the Peoples Bank and Trust Company was not satisfactory. No one positively identified him as the defendant. One witness testified that he could not positively identify the defendant, and the other witness that he was not the man. Evidence of the presentation of a similar check on another occasion is not admissible where there is no posi-

tive identification of the defendant as the person who presented it. *People* v. *Levato,* 330 Ill. 498.

It is not necessary to consider the other assignments of error.

For the errors mentioned the judgment is reversed and the cause remanded. *Reversed and remanded.*