(No. 23375.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT PADLEY, Plaintiff in Error.

*Opinion filed February 19, 1936—Rehearing denied April 15, 1936.*

M. L. COOK, L. A. CRANSTON, and FRANK LINDLEY, for plaintiff in error.

OTTO KERNER, Attorney General, SIDNEY H. DILKS, State's Attorney, and A. B. DENNIS, for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

A jury in the circuit court of Ford county convicted Robert Padley of the crime of rape in manner and form as charged in the indictment, and fixed his punishment at imprisonment in the penitentiary for the term of one year. Motions for a new trial and in arrest of judgment were overruled, and judgment was rendered upon the verdict. He has sued out this writ of error.

All five counts of the indictment were under section 237 of the Criminal Code. (38 S. H. A. 490; Ill. State Bar Stat. 1935, chap. 38, par. 505, p. 1224.) Two counts charged that the sexual act was committed on August 31, 1933, with force and without the consent of Esther Mae Johnson, and the other three charged defendant with the statutory offense, with the age of the prosecutrix alleged at thirteen years.

The defendant contends that his challenge to the array should have been sustained. The jury list chosen by the county board of supervisors in September, 1934, was illegal because it did not contain ten per cent of the voters of Ford county. Accordingly, at a meeting of the county board on March 12, 1935, a new list was made up and adopted by resolution. The panel from which the jury was chosen to try defendant was drawn from this new list. The defendant says that the present jury list is also illegal because the record of the meetings of the board of supervisors does not show that the jury list was selected at the regular September meeting of that board, at an adjourned session thereof, or at a special meeting. He introduced in evidence the record kept by the clerk of the board of supervisors. As originally recorded the minutes did not show that the motion to adjourn from September 11 to September 12, 1934, had carried. The clerk testified that shortly before the defendant's trial, she wrote in the word "carried" in ink. Defendant insists she had no power or authority to make this

amendment. The challenge to the array was properly overruled. Section 3 of the Jurors act provides that if, for any reason, the list or selection provided for in the first two sections of the act, shall not be made at the meeting of the board held at the time specified, such list or selection shall be made at any meeting to be held as soon thereafter as may be. This being the law, the jury list was properly made up at the meeting on March 12, whether it was an adjourned session of the September meeting or not. Defendant's contention must therefore fail regardless of the power of the clerk to make the questioned amendment. But for another reason the objection that the clerk of the board had no power to make the amendment need not be considered. It readily appears from other parts of the minutes that the board adjourned from September to December and from December to March 12 and so it becomes immaterial whether the record showed that the motion to adjourn on September 11 carried.

The defendant correctly contends that the court erred in permitting Mrs. Siebers and Mrs. Boyd to testify that they had heard Mrs. Lambert tell Mr. Richards in the hall about 10:00 o'clock the day before that she did not remember the defendant being at her farm, and that she did not remember any dates. In *Aneals* v. *People,* 134 Ill. 401, at page 414, we said: "Before witnesses can be called to show that statements have been made out of court inconsistent with those testified to at the trial, it is necessary, as before said, to lay the proper foundation, by calling his attention to the time, place and person involved in the supposed contradiction. Then, if he denies having made the declaration or done the act imputed, the contradictory evidence becomes proper." Mrs. Lambert was not asked if she had made the statements in question to Mr. Richards, nor was the time that they were supposed to have been made called to her attention. The impeaching testimony was clearly incompetent and should have been excluded.

The People do not contend that there was any evidence to show that rape was committed with force and without consent. The trial court should have directed a verdict of not guilty on the two counts which charged that it was. The court also erred in refusing to give the form of verdict requested by defendant, which would have required the jury to specify upon which counts, if any, they found defendant guilty.

Defendant is not in position to complain of the instructions to the jury. The court gave the parties ten days in which to file suggestions and objections to the court's charge or instructions. Defendant filed suggestions and objections within the time allowed, but after the jury had returned its verdict. Under section 67 of the Civil Practice act as it was at the time of this trial in April, 1935, all suggestions and objections to instructions had to be made before the case went to the jury or they would be waived. The court had no power to suspend the effect of section 67, and so we do not consider the points made with reference to the instructions.

The defendant contends that the court erred in refusing to permit Grant Tinberg and Catherine Thomas to testify shortly before he closed his evidence, and in sustaining objections to his offer to prove by them that while the prosecuting witness was testifying her grandmother sat behind the State's attorney and signaled by a nod or shake of her head what answers the witness should give. On the re-direct examination of the prosecutrix defendant objected to this conduct by the grandmother. The court stated that he had not observed the grandmother give signals, and admonished both that upon a repetition of such conduct, he would have the grandmother removed from the courtroom. Esther Mae Johnson said that she was not looking at her grandmother, but was looking at the State's attorney. The court did not err in sustaining the objection to the offer of proof, because to have permitted these witnesses to testify

would have injected an immaterial issue into the case. Defendant's counsel should have moved for leave to withdraw a juror and for a continuance at the time he objected to the grandmother's conduct. The court should then have heard the witnesses out of the presence of the jury and should have determined whether the grandmother was offending against the dignity of the court, and whether her conduct had been prejudicial. It was too late to again raise this question at the close of the defendant's case.

Defendant complains of the action of the court in admitting in evidence over his objection the calendar marked by Mrs. Boyd. Without objection Mrs. Boyd had testified to all the circumstances surrounding the making of the memorandum it contained. She did not use the calendar to refresh her memory, and the exhibit was inadmissible. (*People* v. *Greenspawn,* 346 Ill. 484, 493.) The defendant, however, waived the point by not objecting to the testimony of Mrs. Boyd concerning the contents of the memorandum. In *Cook* v. *People,* 177 Ill. 146, 155, defendant contended that the court erred in admitting an entry on a hotel register. The hotel clerk and the proprietor had testified that deceased wrote an assumed name on the register and pointed out the name when she paid her bill. We held the fact was already proved without objection, and that it was not error to admit the entry in evidence. If the calendar were excluded, the testimony of Mrs. Boyd as to its contents would still be in evidence, and so defendant can not now be heard to complain. *People* v. *Gruber,* 362 Ill. 278; *People* v. *Sobzcak,* 286 id. 157; *People* v. *Cassidy,* 283 id. 398.

Defendant contends that the evidence does not sustain the verdict and that he was not proved guilty beyond a reasonable doubt. Esther Mae Johnson testified that on the afternoon of August 26, 1933, she took a birthday gift to Mrs. Padley who lived near her grandfather in Gibson City. Mrs. Padley was not at home, but defendant was

and he invited her into one of the downstairs rooms. They listened to the radio until the ball game was over, and they then went into another room where there was a settee. She and defendant sat down on it, and he began taking liberties with her. She says that in a loud tone of voice she told him to stop. He then suggested that they go upstairs, and she preceded him up the stairway to the bed-room where he had intercourse with her. He told her to come back the next Tuesday, when Mrs. Padley would again be away. She told him she had to get ready for school. After she was out onto the main sidewalk, a distance of twenty-eight feet from the house, she says he told her not to tell anybody. On the way back to her grandfather's she felt a wet spot on her dress with her fingers. The first time she ever told anyone about this occurrence was on June 18, 1934, when she talked to the State's attorney. She told her father about it in September, 1934. She had talked with her grandparents about the case a dozen times, with Mrs. Grace Boyd several times, and with a Mr. Middleton once. She said that she was in the third grade the school year following the alleged occurrence. Defendant presented affidavits of two of her teachers, with his motion for a new trial, to show that they taught her in the sixth grade and that she satisfactorily carried her studies.

Mrs. Grace Boyd, who lived next door to the defendant, testified that on August 26, 1933, about 3:00 o'clock in the afternoon she was sitting in her yard about forty or fifty feet north of the Padley house in the south end of a swing. She heard the prosecutrix say, "Stop," "Now you behave," "Don't" and "Quit." She saw the Johnson girl come out of the house and said she noticed a wet spot on the back of her dress just below her hips. This spot was about three inches in diameter. It was darker than the rest of the Johnson girl's dress and Mrs. Boyd claimed it was visible to her at a distance of two hundred feet. Mrs. Boyd readily admitted that she had been "mad at"

the Padleys for the last five or six years, and did not like either of them. She had considerable feeling against the defendant. Without objection she said that she remembered the date because she wrote the words, "Padley had Johnson girl in the house" and put a circle around the 26th of August on the calendar mentioned above. The defendant's counsel cross-examined her as to the contents of the calendar, and as to the circumstances under which it was marked, and then objected to its admission in evidence. His objection was overruled as we have already pointed out. Mrs. Boyd talked with several persons about the incident. As we have already noted Esther Mae Johnson testified that she had talked with Mrs. Boyd several times. Mrs. Boyd says she told Mrs. Nelson about the occurrence the next day, but it was not until June 18, 1934, almost ten months later, that Mrs. Boyd talked with the parents or grandparents of the prosecutrix.

Anna C. Nelson, who lived across the street and south of the Padley house said she saw Esther Mae Johnson come out of the Padley home on August 26, 1933. She also saw the spot on the dress, but said it was lighter than the dress, and that the dress was tan in color. She said the Johnson girl was shaking her dress in the wind trying to dry it and was watching this witness. She could not estimate how far away she was from the prosecuting witness when this happened. From her testimony it is obvious that she too had talked about the case to several persons, although she denied doing so. She said she did not talk to the grandparents of prosecutrix, until they came to see her. She admitted talking to the State's attorney, and in another instance she said she had seen the occurrence in August, and she mentioned to Mrs. Boyd that she thought, "Well, something."

The defendant denied having intercourse with prosecutrix. His defense was an alibi, and several witnesses testified that his reputation for chastity was good. He was

a painter, paper hanger and decorator. He was fifty-seven years old and had lived in Gibson City thirty years. August 26 was his wife's birthday and she had gone to spend the day at the World's Fair in Chicago. On that day about 8:30 A. M. he met one of his employers, Lott Richards, a farm manager in charge of over six thousand acres of land, and went with him to the Lambert farm about four miles southwest of Leroy. He saw Mrs. Lambert and Martin Messman, the hired man at the Lambert farm, about 10:00 A. M. They remained at Lambert's about an hour. From there they went to a farm south of Bloomington. They then went to Bloomington, where Mr. Richards had other business. They left Bloomington about 3:00 o'clock in the afternoon and went to a farm southeast of Anchor. The trip to the last farm took about an hour. They stayed there a few minutes and returned to Gibson City about 5:00 o'clock. Defendant ate supper at home. Mr. Richards corroborated defendant. He remembered defendant telling him it was his wife's birthday. Martin Messman, who worked on the Lambert farm in August, 1933, remembered seeing the defendant there on August 26, 1933. He recalled the date, because he came home from the World's Fair on August 24. He checked the date from some letters he had. Mrs. E. O. Lambert testified she remembered the defendant was at her place about August 26, 1933.

James Rogers testified that he roomed with the Padleys during August, 1933, and worked at the canning factory. He said that he was home on the afternoon of August 26, and listened to a broadcast of a double-header baseball game between the Chicago and Philadelphia National League teams. He recalled that Charley Root pitched one of the games. Rogers said that no one was in the Padley home from the time he began listening until the games were over.

The single act of intercourse is said to have taken place on August 26, 1933, but nothing was done until June 18,

1934, nearly ten months later, when a conference was had between the State's attorney and various other persons at the home of Esther Mae Johnson's grandfather. This indictment then followed on September 4, 1934, and about a year and a half after the act is said to have taken place, the defendant was placed on trial. Mrs. Boyd and Mrs. Nelson say that they began talking about the incident immediately after they saw the girl come from the Padley home. There is no suggestion in the testimony that the act of intercourse was accompanied by force, although prosecuting witness said she protested loudly enough to be heard by Mrs. Boyd. Moreover, Mrs. Boyd does not claim she did anything to assist the girl, when she said she heard her protests. Mrs. Boyd and Mrs. Nelson did not agree as to the color of the spot on the girl's dress, one testifying it was light and the other that it was dark, although Mrs. Boyd claims she was able to see the spot for a distance of two hundred feet. Her testimony would place her between her house and defendant's and it is not clear that she was in position to see past the Padley home for such distance. Mrs. Boyd's long-standing hostility toward Padley materially weakens the effect of her testimony. The defendant's proof of good reputation for chastity and an alibi was sufficient to raise a reasonable doubt of his guilt. We are reluctant to substitute our judgment on the facts for that of the jury, but where the record discloses, as it does here, that defendant was not proved guilty, we must recognize the error and set aside the verdict. Justice requires that this defendant be accorded a new trial. *People* v. *Rubin,* 361 Ill. 311; *People* v. *Lucania,* 360 id. 150.

The judgment of the circuit court of Ford county is reversed and the cause is remanded.

*Reversed and remanded.*