(No. 27171.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JESSE HARRISON *et al.*, Plaintiffs in Error.

*Opinion filed Sept. 21, 1943—Rehearing denied Nov. 11, 1943.*

MAYER GOLDBERG, for plaintiffs in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, RICHARD B. AUSTIN, and CLEMENT D. CODY, of counsel,) for the People.

MR. JUSTICE GUNN delivered the opinion of the court:

Plaintiffs in error, Jesse Harrison, Paul McCoy, Frank Tornabene, Steve Radaha, Sam Monforti and Sam Marsala, were indicted in the criminal court of Cook county for conspiracy to violate the election laws. They were all tried before a jury and convicted, and sentenced to the penitentiary. On writ of error to the Appellate Court the judgment of the criminal court of Cook county was affirmed as to all of the defendants except Frank Tornabene, and as to him the cause was remanded. The remaining defendants· prosecute a writ of error to this court.

The indictment is in one count for conspiracy at common law. It charged all of the defendants mentioned, and one Thomas H. Caradine, with a conspiracy to violate the election laws in the following manner: (a) to make a false canvass of the votes in an election conducted in the 15th precinct of the 42nd ward of the city of Chicago in a mayoralty election held in Chicago April 4, 1939; (b) to deliver a false return of said election; (c) to make a false statement as to the result of said election; (d) to make a false certificate certifying the correctness of said statement of result. The indictment sets out the particular acts of the accused in the alleged conspiracy. There was no motion made to quash the indictment.

There was a preliminary motion in which it was contended that the indictment charged several conspiracies, and that the State be required to elect upon which one the defendants would be tried. This motion was overruled. Some of the defendants were election officials and some of them were watchers, and it is claimed only the election officials could be guilty of making a false canvass or a false return, and since those who were not election officials could be guilty only of inducing the election officials to violate the law, there were necessarily two classes of offenses charged. The conspiracy charged in the indictment grew out of one distinct transaction, ·viz., what took place after the polls were closed in the said 15th precinct. The charge was the conspiracy to violate the election laws, and if one not an election official advised, or assisted, or abetted an election official to violate the law he would be guilty as principal. (*People* v. *VanBever,* 248 Ill. 136; *Lionetti* v. *People,* 183 Ill. 253.) The matters charged in the indictment were, if true, all a part of one general scheme to conduct a fraudulent election, and the several acts charged were all parts of one general conspiracy, and in such cases the People are not required to elect. *People* v. *Curran,* 286 Ill. 302; *People* v. *Pulliam,* 352 Ill. 318.

The evidence in the case, established by several eyewitnesses, shows that after the polls were closed, and while defendants were all present around the table counting ballots, Radaha commenced marking the ballots with a short pencil, and when Caradine protested defendant Monforti pulled him away from the table, and as a result, before the ballots were turned in, defendants made enough changes so that one candidate received 58 votes more than he was entitled to, and the opposing candidate 7 less than he was entitled to. There were also substantial changes in the result as to other candidates at said election. These false results were canvassed and certified as correct.

The facts, as testified to by eyewitnesses, establish beyond a reasonable doubt the ballots in said precinct, when placed upon the table, were tampered with so as to produce a different result than would have been shown by the ballots themselves. The handwriting expert examined the ballots of this precinct and found 77 ballots which bore cross marks made by different persons. It is unnecessary to go into the details of the evidence other than to say not only were the ballots changed, but a false canvass and false returns, based upon the changes, were certified by the election officials, and certificates signed certifying the returns made, after the tampering with the ballots, were correct.

It is claimed error was committed in admitting the ballots in evidence. The evidence shows the voting took place in more than three thousand Chicago precincts, and that there were 65 precincts in the 42nd ward; that the election commissioners keep a permanent record of the whereabouts of the ballot boxes brought in after elections are held under their supervision, and that this record is kept in the regular course of business. The entries are made under the supervision of the chief clerk of the election commissioners. When the ballots were placed in the vault the record book contained memoranda as to the disposition and whereabouts of each ballot box, which memoranda were made at the time of the delivery of the box and in the regular course of business. On the day of the trial the chief clerk was ill, and the acting chief clerk testified as to the custody of the ballots from the time they were delivered to the election commissioners.

Plaintiffs in error claim that the location of the ballots was not accounted for from the night of April 4, 1939, to the morning of April 7, 1939. The evidence shows in the first instance the ballot boxes were taken to the City Hall and kept there until the morning of April 7, when they were delivered to a warehouse. The warehouse was

guarded night and day by a policeman. At the time each ballot box was delivered a memorandum was made as to the condition of the box as received. On account of the great number of boxes the witnesses testifying to such facts did not have an independent recollection of the facts appearing in the memorandum, and the court, over the objection of the defendants, ruled that the acting chief clerk might hold such memoranda in his hand and refresh his memory as he went along. The rule is that where there has been a writing made by a witness, or made at his direction at the time of the fact, for the purpose of preserving the memory of it, if at the time of testifying he can recall nothing further than that he had accurately reduced the whole transaction to writing, the latter may be admitted in evidence. (*People* v. *Greenspawn*, 346 Ill. 484.) It would be practically impossible for a witness to recall the condition of each ballot box in a general election, such as that held April 4, 1939, and such memoranda were doubtless made for the purpose of preserving the facts, and there was no error in permitting this testimony.

Plaintiffs in error call our attention to certain cases holding in what manner the preservation of ballots must be shown in election contest cases. We have held that rule does not apply in criminal cases, as the issue in one case is a title to the office, and the other as to whether there has been a violation of the criminal laws. There are eyewitnesses in the present case that the election laws were violated. The ballots introduced in evidence are merely corroborative of this testimony. In *People* v. *Newsome*, 291 Ill. 11, where defendant was convicted of an election fraud, we said: "Whatever may be the rule as to the competency of ballots in cases of election contests, such rule does not apply to the competency of ballots in a criminal prosecution of this character. They were admissible in evidence, together with evidence of the

manner in which they had been preserved, for what they were worth, and it was for the jury to determine what weight should be given to them as evidence under all the circumstances of the case." We think the evidence discloses with reasonable certainty that the ballots in question were properly preserved, and at the trial were in the same form as when delivered to the election commissioners. And even though the ballots were not preserved in a manner required for use in election contests, yet it was sufficient to admit them in evidence, and it was for the jury to determine whether or not the changes, ascertained from an examination of the ballots, corroborated, or failed to corroborate, the testimony of the eyewitnesses with respect to the alleged frauds.

It is also objected that the court permitted a conversation had with one of the defendants to be admitted in evidence. This defendant denied the substance of the conversation. The court admitted it solely as against such defendant, and instructed the jury it should not be considered as to the other defendants. We have held this is not error. *People* v. *Fox,* 269 Ill. 300; *People* v. *Bloom,* 370 Ill. 144.

It is also claimed the defendants did not have a fair trial because at the close of one day's session one of the defendants was taken into custody by a police officer, and that the newspapers the following day featured the arrest of this defendant. The jury was not locked up and a motion was made for a mistrial, which was denied by the court. There is nothing in the record to show whether the jury saw or read the newspaper articles nor anything except the statement of counsel for plaintiffs in error that they were prejudiced thereby. In the absence of any such showing we have held it is not error to refuse to withdraw a juror and declare a mistrial. *People* v. *Herbert,* 340 Ill. 320.

The complaint is also made certain instructions were tendered by the defendants and refused by the court. No

contention is made there were any instructions given which did not correctly state the law, but that the court erred in refusing certain instructions tendered on behalf of the defendants. We have examined the entire series with care, and without going into detail find there was no error in the giving or the refusing of instructions.

The trial of this cause took more than three weeks and involved a great amount of testimony. It is not necessary that the trial court be absolutely free from error in order that the verdict of the jury and the judgment of the court be affirmed. If the case shows the case was fairly tried, that no substantial error occurred in the conduct of the trial or the attitude of the court, and the evidence shows beyond a reasonable doubt the guilt of defendants, the judgment of the trial court should be affirmed.

We are convinced from an examination of the record in this case that the defendants had a fair trial; that the evidence showed them guilty beyond a reasonable doubt, and the judgment of the Appellate Court for the First District in affirming the criminal court of Cook county is affirmed.

*Judgment affirmed.*