THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL SKIDMORE, Defendant-Appellant.

Third District   No. 77-405

Opinion filed February 10, 1978.

Julius Lucius Echeles and Laurence J. Bolon, both of Chicago, for appellant.

864

Edward Petka, State's Attorney, of Joliet (James E. Hinterlong, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Will County which found the defendant, Paul Skidmore, guilty of violating section 1 of "An Act to prohibit the solicitation of legal business* * *" (Ill. Rev. Stat. 1975, ch. 13, par. 15), which prohibits an individual not a licensed attorney from soliciting legal business for a money fee or other remuneration. The trial court sentenced the defendant to a term of three months imprisonment and further imposed a fine in the sum of $500.

The defendant was tried by a bench trial and the evidence disclosed that a nine-year-old son of Judith Hunter was struck by an automobile on October 15, 1976. Subsequently, on October 17, 1976, Mrs. Hunter received a phone call at her home. The voice was that of a male whom she later met at her home on November 19, 1976. During the telephone call the caller identified himself as Harold Stevens, an attorney from Chicago, and stated that he had knowledge of her son's accident and that he felt that legal action might be needed. The caller, later identified as the defendant, during the initial phone call also identified as the defendant, during the initial phone call also talked to Mrs. Hunter's husband, to whom he gave a telephone number.

On November 17, 1976, Mrs. Hunter received another call from the defendant, who still identified himself as Mr. Stevens. She was asked if she had thought about hiring him as a lawyer and replied that she was still thinking about it but that her husband was out of town and she requested the caller to come to her home on November 19, 1976. The caller, being the defendant, agreed to do so.

After this call Mrs. Hunter called an attorney in Joliet and she was thereafter called by an individual from the State's Attorney's office. On November 19, 1976, at approximately 6 p.m. Mr. Hjemvick, an investigator, and a court reporter, both from the State's Attorney's office, came to Mrs. Hunter's home. Mr. Hjemvick at this meeting and a subsequent meeting portrayed Mrs. Hunter's husband. During this meeting the defendant said that there was a possibility of suing the driver of the motor vehicle which struck her son. He also brought with him a copy of a police report which was about the son's accident and provided Mrs. Hunter with a business card bearing the name Harold Stevens. This particular meeting lasted for approximately 1 or 1½ hours during which time the court reporter, Mr. Rydman, was located two rooms away and was transcribing the conversation between the parties.

Mrs. Hunter and Mr. Hjemvick, who portrayed her husband, did not

agree to legal action during the first meeting with the defendant so he again came to the Hunter home on November 29, 1976, at approximately 1:30 p.m. The scenario was the same as at the previous meeting. This time the defendant, alias Harold Stevens, obtained a release of medical records, said release being signed by Hjemvick, and further obtained authorization to commence legal action.

A further recitation of the facts as adduced by the testimony and evidence during the course of defendant's trial will be set forth as they become pertinent to the issues presented for determination by this court.

The first issue presented is the defendant's contention that the trial court erred in admitting into evidence two typewritten transcripts of conversations with the accused where the court reporter testified that the transcriptions were not accurate and complete.

Addressing ourselves to this issue the record discloses that on direct examination the court reporter testified that the transcripts of the meeting on the 19th and 29th of November were a true and accurate record of the conversations which ensued at those meetings. On cross-examination the witness testified that the transcripts were not true and accurate because of interruptions resulting in two people attempting to talk at the same time.

The defendant labels the two transcripts as past recollections recorded, which if they are in fact such, would constitute an exception to the hearsay rule. In order to be admissible as an exception to the hearsay rule there must be present four essential elements:

"(1) [T]he witness must have had firsthand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it, (3) the witness must lack a present recollection of the event, and (4) the witness must vouch for the accuracy of the written memorandum." McCormick on Evidence §299, at 712 (2d ed. 1972).

The defendant contends only that the last element is absent, since the court reporter testified that the transcripts were not true and accurate because of interruptions among those being recorded when two people attempted to talk at the same time.

The trial judge in admitting the transcripts made certain remarks which we deem to be pertinent and which are as follows:

"The Court: Well of course my notion of it is that that is true [referring to interruptions destroying the transcript accuracy] even if you are just going to have a witness testifying as to what he recalls, the chances are he wouldn't remember the interruptions any way so he couldn't tell you that from memory, besides that it happens frequently in the trial of cases and yet the record goes up

on appeal time after time and I'm sure that there are very few court reporters which can take down what two people are saying simultaneously. The objection of the defendant is overruled."

■■ As we interpret the trial judge's remarks he was recognizing that it is difficult if not well nigh impossible to obtain a perfect transcript or recordation of testimony or conversations in every instance. The trial judge was in effect saying that the transcripts in substance, with the exception of inaccuracies resulting from interruptions, reflected the conversations of the parties present at the two meetings in the Hunter home. While we know of no precedental case supporting the admissibility into evidence of transcripts which contain minor inaccuracies yet are substantially accurate as to all substantive matters, we nevertheless agree with the trial judge's remarks and ruling. To hold otherwise would be to flaunt common sense and make it virtually impossible to have a valid transcript of any clandestine or illegal transaction.

We note that the defendant in urging error in regard to the admissibility of the transcript relies heavily on the case of *People v. Munoz* (1975), 31 Ill. App. 3d 689, 335 N.E.2d 35. In *Munoz* the question presented was the admissibility into evidence of an "incident book entry" made by an aide at a State hospital. The reviewing court held that such entry did not meet the requirements of a past recollection recorded and therefore qualify as an exception to the hearsay rule. With the ruling in *Munoz* we agree because it is evident that all four of the required elements which we have previously itemized were absent.

■■ When a proper authentication has been made to establish a past recollection recorded and therefore enables a record to be admitted into evidence, the record may be so admitted and be read into evidence or testified to. (See *People v. Jenkins* (1973), 10 Ill. App. 3d 166, 294 N.E.2d 24; *Wilson v. Parker* (1971), 132 Ill. App. 2d 5, 269 N.E.2d 523; *People v. Greenspawn* (1931), 346 Ill. 484, 179 N.E. 98.) It should be noted in the instant case that counsel for the defendant not only failed to cross-examine any of the participants at the two meetings in the Hunter home regarding statements in or possible omissions in the transcript made of the conversations during such meetings, but after the same were admitted into evidence indicated to the court a willingness to waive a reading of the transcripts. We are well aware of the fundamental rule that the prosecution must prove a defendant guilty; however, if the defendant had knowledge of damaging inaccuracies in transcripts introduced into evidence he may by cross-examination of witnesses call to the court's attention such inaccuracies. We find no error in the trial court's admission of the two transcripts into evidence.

Secondly, the defendant contends that his conviction cannot stand because there was no evidence adduced which showed that his solicitation was for remuneration.

The record discloses the following conversation between the defendant and Mr. Hjemvick, who was posing as Mrs. Hunter's husband:

"Mr. Hjemvick: So,. if you lose, then you pay nothing?

Mr. Stevens: Nothing.

Mr. Hjemvick: Then what happens if you win?

Mr. Stevens: Then if we are successful and then the fee that we are extracting for services under those circumstances would be a fee of one-third of whatever that gross collection might amount to* * *."

The defendant asserts that the above colloquy makes it clear that only if retained and only if successful the attorney would receive one-third of the gross recovery for services rendered. The defendant apparently concedes a solicitation but argues that the remuneration to be received was not for solicitation but for recovery of damages. The statute which the defendant was charged with violating reads as follows:

"§1. Prohibition. It shall be unlawful for any person not an attorney at law to solicit for money, fee, commission, or other remuneration directly or indirectly in any manner whatsoever, any demand or claim for personal injuries or for death for the purpose of having an action brought thereon, or for the purpose of settling the same." Ill. Rev. Stat. 1975, ch. 13, par. 15.

■■ We do not agree with the defendant's interpretation of the foregoing statute. It is clear to this court that the defendant was soliciting legal business, to-wit, a personal injury action. For obtaining that business it is further clear from the use of the word "we" that he expected remuneration if the legal proceedings resulted in a recovery for the Hunter family. That the possible remuneration that the defendant was to receive was based upon a contingency in our opinion does not alter the fact that he was soliciting for a remuneration. The handling of personal injury suits on a contingent fee basis has long been an accepted practice in the legal system of our State. That ultimately he would be rewarded for his solicitation if the action was successful by parties other than himself does not serve to remove the defendant's activities from the scope of the statute, since it specifically provides that the fee, commission or other remuneration can be received either directly or indirectly and such action still constitutes a violation. We believe that the defendant's argument that there was no evidence to support a finding that his solicitation was for remuneration is at the best a tenuous one and without merit.

The defendant next contends that the State did not properly prove that he was not listed on the Master Roll of Attorneys on file with the clerk of the supreme court.

An element of the offense of solicitation of legal business is that the offender is not an attorney at law. In order to sustain this element the State called as a witness John William Stephenson, who was an investigator

with the Attorney Registration and Disciplinary Commission of the State of Illinois. This witness testified that after conducting a search of attorneys licensed to practice in Illinois the name of the defendant, to-wit, Paul Skidmore, or the alias used by the defendant, namely Harry Stevens, was not listed.

The defendant argues that this method of proof is not proper since the controlling list of attorneys who are licensed to practice in our State is a master roll filed in the office of the clerk of the supreme court. We note from the record that the witness Stephenson testified that the Registration and Disciplinary Commission maintained a master roll of all attorneys authorized to practice law in Illinois, and that the roll is identical to the one kept in Springfield with the clerk of the supreme court. The witness further testified that there is in existence on microfilm another list of attorneys licensed to practice in Illinois or who were ever licensed to practice in our State. The witnesses testified that after checking the microfilm list there was never a Paul Skidmore licensed to practice law in Illinois.

■■ The defendant asserts that the records filed with the clerk of the supreme court should have been used to determine whether or not the defendant was licensed to practice law in Illinois and that such records or a certified copy of them should have been produced in court. We find no merit in this assertion since there was no evidence that the records maintained by the Attorney Registration and Disciplinary Commission were different than those kept by the clerk of the supreme court, but on the contrary the witness testified that the records were identical.

The defendant argues that the failure to produce in court the master roll of attorneys in the possession of the clerk of the supreme court was error in that it violates the hearsay rule. The thrust of the reason for prohibiting evidence or testimony because it constitutes hearsay is based upon the fact that such evidence precludes a party from conducting a cross-examination in regard to such evidence. In the instant case the record discloses that defendant's counsel did cross-examine the witness Stephenson and we cannot conceive of any question other than those he asked that counsel could have propounded if the master roll had been produced in court.

■■ The defendant in support of his contention that the master roll of attorneys should have been produced in court relies on the case of *United States v. Rohalla* (7th Cir. 1966), 369 F.2d 220. In *Rohalla* the reviewing court held that it was reversible error to permit the government to prove contents of printed record of automobile registration by oral testimony of witness in order to corroborate testimony of another witness. We immediately note that in *Rohalla* there were in fact records in esse while in the instant case the oral testimony of the witness proved a negative,

to-wit, that there was no individual named Paul Skidmore or Harry Stevens listed on any roll of attorneys licensed to practice law in the State of Illinois. We further note in *Rohalla* as did the reviewing court that the printed records pertaining to automobile registration were readily available to the government since the book in which they were contained was in the same building where the trial was being held. In the case before us the problem for the State was far more complex and difficult since it would have entailed bringing into court from Springfield or Chicago literally thousands of microfilms or records. Under the circumstances in the instant case we do not believe that there was a violation of the best evidence rule; however, should there have been such a violation, it was a technical one which in no way prejudiced the defendant and certainly would not constitute reversible error.

■■ The defendant next urges as reversible error that the trial court did not afford him an opportunity to make a statement in his own behalf prior to imposing sentence. We are cognizant that our Criminal Code provides that after a determination of guilt a defendant shall have an opportunity during the sentencing hearing to speak in his own behalf. (See Ill. Rev. Stat. 1975, ch. 38, par. 1005—4—1(a)(5).) While the proper practice is to afford a defendant an opportunity to make a statement in his own behalf during a sentencing proceeding, failure to do so has not been deemed to be a fundamental defect of such magnitude as to require the reversal of a conviction and the voiding of the sentence imposed thereon. See *People v. Darling* (1977), 46 Ill. App. 3d 698, 361 N.E.2d 121, and *People v. Spiler* (1975), 28 Ill. App. 3d 178, 328 N.E.2d 201.

The defendant further argues that the sentence he received should be vacated because the trial court heard hearsay evidence of other crimes when sentence was imposed. From the record we find it to be true that the presentence report contained hearsay allegations of prior improper activities on the part of the defendant. The trial court refused to strike the objectionable material contained in the report but would accept it for what it was, to-wit, a purely hearsay statement.

■■ In the instant case the defendant requested a sentence of conditional discharge. When a defendant requests probation the trial court assumes responsibility to public as well as defendant and the trial court is entitled to as broad a base of relevant information as is possible in making a decision whether or not to grant probation. (See *People v. Kelly* (1976), 36 Ill. App. 3d 476, 344 N.E.2d 50.) Certainly the same rule should apply when a defendant requests a sentence of conditional discharge. On appeal it is to be assumed, absent any indication to the contrary, that the trial judge disregards all evidence except that which is competent and relevant to the determination being made. (See *People v. Sawyer* (1971), 1 Ill. App. 3d 1096, 275 N.E.2d 771; *People v. Grabowski* (1957), 12 Ill. 2d

462, 147 N.E.2d 49.) We find nothing in the record in the instant case which in any way indicates that the improper material contained in the presentencing report served to prejudice the trial judge against the defendant when sentence was imposed.

Lastly the defendant claims that the sentence imposed upon him is excessive. As we have previously stated, the defendant was fined in the sum of $500 and sentenced to a three-month period of incarceration in the county jail. The fine levied against the defendant is the maximum allowable; however, he could have been sentenced to a term of imprisonment up to six months. (See Ill. Rev. Stat. 1975, ch. 38, pars. 1005—5—3(d), 1005—8—3(a)(2), and 1005—9—1(a)(3).) The defendant quarrels not with the fine in the sum of $500 but contends that the three-month term of imprisonment is excessive.

At the outset we note that the defendant had previously been convicted of an income tax evasion charge. While the defendant's crime in the instant case was one free from violence, it was nevertheless the product of a devious and calculating mind and could well have injured and harmed innocent people. A crime need not be one of violence before it can be considered serious. See *People v. Waud* (1977), 69 Ill. 2d 588, 373 N.E.2d 1.

■■ While we may have imposed a different sentence that possibility is immaterial in that we are only to determine whether the trial court abused its discretion by imposing an excessive sentence. We can not and do not consider that the defendant received an excessive sentence.

For the reasons stated the judgment of the circuit court and the sentence imposed thereon is affirmed.

Affirmed.

BARRY, P. J., and STENGEL, J., concur.