THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DANIEL J. UNES, Defendant-Appellant.

Third District    No. 3—85—0583

Opinion filed May 21, 1986.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SCOTT delivered the opinion of the court:

After a bench trial, the defendant, Daniel J. Unes, was convicted

of the crimes of calculated criminal drug conspiracy and unlawful delivery of a controlled substance. Judgment of conviction was entered only on the offense of calculated criminal drug conspiracy, and Unes was sentenced to a 10-year term of imprisonment.

On April 24, 1984, in a two-count indictment Unes, along with Robert Stout and David Adams, was charged with unlawful delivery of more than 30 grams of a substance containing cocaine and with calculated criminal drug conspiracy for undertaking a conspiracy to make the delivery with the other two defendants and organizing or directing that conspiracy. The charges against Unes were based primarily on a transaction between undercover agent Hackett and Stout, and the events emanating from it. Each defendant arranged for separate counsel, and the cases were severed for trial.

During Unes' bench trial, the State presented testimony of several Metropolitan Enforcement Group (MEG) agents concerning conversations with Unes and Stout. The report of a forensic chemist which identified the white powder delivered to the agents as containing cocaine and the chemist's testimony concerning the report were also entered into evidence.

At trial, agent Hackett testified he met with Stout, seeking to arrange for the purchase of two ounces of cocaine for $4,000, and that Stout informed him that he had a source in Metamora whom he would contact. Through a later phone conversation, Stout told Hackett he was going to pick up his source in Metamora and return to an address in Peoria, which was later identified as the residence of Unes. Agent Bates, who was conducting surveillance, testified that Stout left Peoria and drove to the residence of the other codefendant, Adams, in Metamora and that he followed Stout's car, which contained two people, back to Unes' residence in Peoria. Hackett further testified that Stout phoned him from Metamora informing him that he had spoken to "the man on Bigelow" and would be going to the Bigelow address. In a later phone conversation after Stout arrived at the Bigelow address, Stout informed Hackett the cocaine would be there in 10 or 15 minutes. Stout then called Hackett again saying he was unable to obtain the cocaine that evening, but that he could obtain the two ounces the next day.

In a series of phone conversations the next day, Stout informed Hackett that the man from Metamora, Stout and the man on Bigelow, whose name was Dan, were present at the Bigelow address and inquired whether Hackett was still interested in purchasing the two ounces of cocaine. Hackett responded affirmatively and was told by Stout that "the man" would have to go across the river and would

return shortly. Hackett refused to go to the Bigelow address in order to consummate the transaction so it was agreed that a meeting would take place at a nearby restaurant.

Surveillance agents testified that Stout drove to the restaurant with Unes as a passenger, and upon their arrival, Stout left his car and entered Hackett's car. Hackett testified Stout then gave him two plastic bags containing a white, powdery substance. The agents then entered the area and arrested Stout and Unes, who had remained in Stout's car during the transaction.

After he was taken into custody and received the *Miranda* warnings, Unes told officers that Adams had brought Stout, whom he claimed to have not known previously, to his residence to locate two ounces of cocaine. Unes stated that he did not normally deal in orders of that size and that the three of them called around to locate two ounces. Further, that through a "friend of a friend" in Pekin, he had been able to locate the cocaine and had gone to Pekin to pick up the two ounces, returning to his home where the three defendants then weighed and cut the cocaine. Finally, Unes stated he had stopped dealing in cocaine and that he normally dealt only with fractional amounts of cocaine for personal use.

Hackett further testified he field tested the contents of the bags at the MEG office the night of the arrest and delivered the bags the next day to Eileen Taylor, a forensic chemist at the Morton Crime Laboratory.

Taylor testified that she received the two bags from Hackett, but that she did not have independent recollection of having weighed and analyzed the substances. She, however, identified People's exhibits Nos. 8, 9, and 10 as the originals of her case report which she had prepared at the time she weighed and analyzed the substances. Taylor further testified she prepared the report at the time of her analysis of the substances, that the report was made for the purpose of preserving the results of her analysis and that she recorded her opinion concerning what the substances contained in People's exhibit No. 8 at the time of her analysis. Finally, that after conducting her tests she resealed the bags and placed her initials and the date April 11, 1984, on the resealed bags.

People's exhibits Nos. 8, 9, and 10 were admitted into evidence, and Taylor was permitted to testify about them. Relying on the reports, Taylor testified that each bag weighed 27.4 grams and, on the basis of infrared spectrophotometry testing, her opinion was that the white powder contained in each bag was cocaine.

On appeal, Unes contends first that the State failed to prove be-

yond a reasonable doubt that he organized or directed the conspiracy and, therefore, his conviction for calculated criminal drug conspiracy must be reversed. Specifically, that the evidence presented demonstrated only that he was the third person brought into the conspiracy to obtain the drugs and that he did not organize or direct the conspiracy.

According to statute, a defendant engages in a calculated criminal drug conspiracy when he undertakes a conspiracy to commit certain drug possession or delivery violations with two or more other persons and "he obtains anything of value greater than $500 from, or organizes, directs or finances such violation or conspiracy." (Ill. Rev. Stat. 1985, ch. 56½, par. 1405(b)(3).) This court has previously held that the offense of calculated criminal drug conspiracy requires proof "that the defendant either had sufficient influence over his coconspirators to be in a position to systematize their activities or to give orders or instructions that would to some extent be binding," and in keeping with legislative intent, the statute "must be read to be confined to those offenders who can be said to exercise a governing or determining influence over narcotics violations." (*People v. Lucas* (1975), 33 Ill. App. 3d 309, 314, 337 N.E.2d 103, 107.) Further, to determine whether any one of the defendants in a conspiracy has the requisite sufficient influence, the extent of his involvement must be measured against that of his co-conspirators.

Unes contends the evidence establishes that only one of the co-conspirators, Stout, had the requisite level of involvement that would sustain a conviction of the offense of calculated criminal drug conspiracy. He implicitly argues that only one member of a conspiracy may be subject to this offense. With regard to this latter point, it is clear from other cases that there may be more than one organizer or director of a calculated criminal drug conspiracy. See *People v. Simon* (1981), 101 Ill. App. 3d 89, 99, 427 N.E.2d 843, 851; *People v. Vincent* (1980), 92 Ill. App. 3d 446, 461-62, 415 N.E.2d 1147, 1159.

In comparing the relative roles of the co-conspirators, it is clear that Stout was in charge *initially* of the activities leading to the ultimate delivery of a controlled substance to agent Hackett and that co-conspirator Adams' involvement in the conspiracy did not rise to the level of influence or direction possessed by Unes. However, the record reflects that neither Stout nor Adams held the position in drug circles enabling them to obtain an amount of cocaine in the range of a Class X felony. Of the three co-conspirators, only Unes was in the position to obtain the two ounces of cocaine. Sec-

tion 405 of the Cannabis Control Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1405), which outlines the offense of calculated criminal drug conspiracy, has been held by this court as: "designed to penalize most severely those narcotic dealers who are considered particularly dangerous either because their position within drug circles or the leadership and organizing functions they perform." (*People v. Lucas* (1975), 33 Ill. App. 3d 309, 314, 337 N.E.2d 103, 107.) The evidence reasonably shows that Unes directed at least part of the calculated drug conspiracy. Unes proceeded alone to Pekin to obtain the cocaine from his source, while Stout and Adams remained at his home. The cocaine that Unes obtained was also weighed and cut at his home using his cutting agent and, finally, Unes accompanied Stout to make the delivery to Hackett. The record *in toto* reasonably establishes that Unes' involvement in the conspiracy rose to the level of directing and organizing at least a portion of the conspiracy and we, therefore, affirm his conviction for calculated criminal drug conspiracy.

■ Unes secondly contends that an improper foundation was laid for the introduction of the forensic chemist's report as past recollection recorded and, therefore, it was improper for the chemist to testify from the report which was admitted into evidence. It is well established that a recording must meet the following four basic requirements to be admissible under the exception to the hearsay rule which provides for past recollection recorded: (1) the witness must have had firsthand knowledge of the event; (2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it; (3) the witness must lack a present recollection of the event; and (4) the witness must vouch for the accuracy of the written memorandum. (*People v. Skidmore* (1978), 56 Ill. App. 3d 862, 865, 372 N.E.2d 723, 726, *cert. denied* (1978), 439 U.S. 912, 58 L. Ed. 2d 258, 99 S. Ct. 282; *People v. Harrison* (1943), 384 Ill. 201, 206, 51 N.E.2d 172, 175.) Unes challenges two of the above four foundational requirements for admissibility of the chemist's report as past recollection recorded. He claims, first, the chemist could not testify conclusively concerning when the report was prepared and, secondly, that she could not vouch for its accuracy.

This court has previously held a written statement which the proponent seeks to admit as past recollection recorded must have been made "at or near the time" of the event which was recorded therein. (*People v. Skidmore* (1978), 56 Ill. App. 3d 862, 865, 372 N.E.2d 723, 726.) In the instant case, Taylor testified that her report

was prepared contemporaneously with her weighing and analyzing of the substances she had received from agent Hackett. Though she was unable to pinpoint the exact day or days during which she conducted her analysis, her testimony established that she prepared the report concurrently with the analysis. The record reflects the substances were analyzed during the period of time between their receipt on April 4, 1984, and the time the bags containing the substances were resealed on April 22, 1984. The report, therefore, was prepared sometime within that eight-day period which is clearly "at or near" the time of the analysis. The trial court could properly find that the report was prepared within an appropriate time period as required by *Skidmore*.

In regard to the latter foundational requirement, that the witness must vouch for the accuracy of the written memorandum which is admitted into evidence, Taylor's testimony that the report was in her handwriting, her initials were on it, she observed no markings other than her own on the document and her reports were always prepared as she conducted her analysis and she never remembered deviating from that procedure reasonably satisfied the requirement of vouched-for accuracy. Finally, Taylor testified, "There is no doubt in my mind as to the accuracy of these documents (her report)."

■ The testimony of Taylor sufficiently established that her report was prepared contemporaneously with the activities therein recorded and the accuracy of her report was sufficiently vouched for, thus enabling the trial court to properly admit the report into evidence as past recollection recorded. (*People v. Olson* (1978), 59 Ill. App. 3d 643, 375 N.E.2d 533.) Given the report itself is admissible, Taylor was properly allowed to testify from the report concerning her examination of the substances.

■ The final issue raised by Unes is whether the trial court committed reversible error in allowing agent Hackett to testify concerning his conversations with Stout under the exception to the rule against hearsay evidence for the statements of a co-conspirator made in furtherance of a conspiracy. A significant component of the State's case against Unes consisted of Hackett's testimony concerning these conversations. Their substance implicated Unes in the delivery and were particularly important in establishing the degree of his involvement as it related to the calculated criminal drug conspiracy charge and the question of accountability. Unes contends the admission of this evidence violated his constitutional right to confront the witnesses against him, given that Stout was not called by the State to testify. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, sec. 8.

The rule in Illinois is that declarations of co-conspirators are admissible against all conspirators when a conspiracy is shown to exist between the declarant and one of the defendants and the declarations are made in furtherance of and during the pendency of the conspiracy. (*People v. Goodman* (1980), 81 Ill. 2d 278, 283, 408 N.E.2d 215, 216; *People v. Davis* (1970), 46 Ill. 2d 554, 264 N.E.2d 140. See *Dutton v. Evans* (1970), 400 U.S. 74, 27 L. Ed. 2d 213, 91 S. Ct. 210.) That this rule does not violate the confrontation clause of the sixth amendment has received recent support in the United States Supreme Court decision of *United States v. Inadi* (986), 475 U.S. _____, 89 L. Ed. 2d 390, 106 S. Ct. 1121. In *United States v. Inadi,* the United States Supreme Court held that the confrontation clause does not require a showing that a nontestifying co-conspirator is unavailable to testify as a condition for admission of that co-conspirator's out-of-court statements.

■ The primary case upon which Unes relies for his contention that out-of-court statements may not be admitted under the co-conspirator exception to the hearsay rule, unless it is shown that the co-conspirator was unavailable to testify, is *Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531. The recent holding in *Inadi* establishes that the *Roberts* case reaffirms only the long-standing rule that applies "unavailability analysis" to the *prior testimony* of a witness not produced at trial and does not stand for the broader proposition that no out-of-court statement can be introduced by the prosecution without a showing that the declarant is unavailable.

In applying the rationale and holding of the court in *Inadi* to the instant case, we find Hackett's testimony concerning Stout's statements was properly admitted into evidence pursuant to the co-conspirator exception to the hearsay rule, without the necessity of demonstrating Stout's unavailability as a witness at trial.

■ As in the cases of *Inadi, Goodman* and *Dutton,* the salient factors which allowed admission into evidence of the co-conspirators' statements in these cases are also present in the instant case. Stout's declarations were made in furtherance of a conspiracy and during the pendency of the conspiracy. Stout had knowledge of the facts, his being involved in arranging for the unlawful delivery of cocaine, and the statements he made concerning Unes were against his penal interest. Further, Unes was able to cross-examine Hackett who testified that Stout made the statements which implicated him. Finally, Stout's statements underscore Unes' own inculpatory admissions, to which a police officer testified, that he alone obtained the

cocaine for the purpose of delivering it to the undercover agent and then proceeded at his residence, along with Stout and Adams, to prepare the cocaine using his cutting agent.

For the foregoing reasons, we sustain the trial court's findings that Unes was guilty of calculated criminal drug conspiracy and unlawful delivery of a controlled substance. We affirm the judgment of the circuit court of Peoria County on the conviction of calculated criminal drug conspiracy and the sentence entered thereon.

Affirmed.

HEIPLE and BARRY, JJ., concur.