THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BEN H. GREEN, Defendant-Appellant.

(No. 54600;

First District—May 28, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, and Gene Eich, Senior Law Student, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, (Robert A. Novelle and Stephen R. Kramer, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE ENGLISH delivered the opinion of the court:

*OFFENSE CHARGED*

Burglary. Ill. Rev. Stat. 1967, ch. 38, sec. 19—1.

*JUDGMENT*

After a trial by jury, defendant was found guilty and sentenced to a term of 3 to 5 years.

*CONTENTIONS RAISED ON APPEAL*

1. Defendant was erroneously denied the right to examine a police report and use it on cross-examination for the impeachment of a witness.

2. Defendant was prejudiced by remarks of the prosecutor on cross-examination and final argument.

3. A motion to suppress an in-court identification was erroneously denied.

*EVIDENCE*

*Nellie Davis,* for the State:

She lives in an apartment with her husband at 4958 King Drive. On

June 17, 1969, she left her apartment at 8:00 A.M. The doors and windows were locked. When she returned around 2:30 P.M., she found that the apartment had been broken into. Three hundred dollars was missing and in the kitchen she found suitcases packed with silverware, carving sets, and steak knives.

*Norman Jackson,* for the State:

He lives with the Davis family at 4958 King Drive. He left the apartment at 7:30 A.M. and returned at 3:30 P.M. Three hundred dollars, which he had placed in a slipper under a dresser, was missing.

*Lillian Hight,* for the State:

She lives at 354 East 50th Street. Her apartment is across from the Davises and she can see their kitchen from her bedroom window, which is 15 or 20 feet away. At about 1:00 P.M. on June 17, 1969, she was in her kitchen when she heard a crash. She immediately ran to the bedroom window with her husband and saw a lot of glass and a man on the Davis porch, about 30 feet away, one floor down. The man, whom she identified in court as defendant, was standing with a suitcase in each hand. He turned, stared in her face, set the suitcases down, and ran down the steps. She was wearing her glasses when she saw defendant on the porch. He was wearing brown or rust pants, sneakers and a dark shirt, and was a dark Negro.

She called Mrs. Davis' mother-in-law who lives across the hall, and told her that there was a man in Mrs. Davis' apartment. Mrs. Davis' mother-in-law called the police.

The following day, she saw defendant coming up the street in front of her house, wearing the same clothes he had worn the day before. She recognized him and called the police. She gave the policemen a description of defendant's clothes, face, and build, and one of them wrote something down. The police brought defendant to her apartment.

*Charles Hight,* for the State:

He lives at 354 East 50th Street. On June 17, 1969, he was on his back porch when he heard a noise. He went into his bedroom with his wife to investigate. He put the venetian blinds up, and saw a man on Mrs. Davis' porch across the courtyard about 35 feet away. The man looked right up at him, for three or four minutes; then he tried to get the back door unbolted, which he did; and went down the back stairs. When he first saw the man, he had two small overnight suitcases in his hands. The man was wearing rust colored slacks, a pale green short sleeve shirt, and tan shoes. He recognized him as someone he had seen in the neighborhood occasionally. He did not remember testifying at the preliminary hearing that he had seen a man coming out of the window.

. The investigating officers opened the suitcases which were left on the

back porch. One contained Mrs. Davis' silverware, the other her carving set. The officers left the suitcases in her kitchen.

(He made an in-court identification of defendant as the man he had seen on the porch.)

*Officer Caccitolo,* for the State:

He is a police officer who, on June 18, 1969, went to 4958 South King Drive where he arrested defendant, after a description of defendant had been given to him by the Hights. He was not the officer who took down this description.

*Ben H. Green,* in his own behalf:

He lives at 5013 King Drive. On June 17, 1969, he was at his brother's house at 41st and South Calumet Avenue from 11:00 or 11:30 A.M. until 4:00 or 4:30 P.M.

On June 18, 1969, the day he was arrested, he was at his cousin's house at 5013 King Drive and was going into the building on his way back from the store when two police cars pulled up. He was asked his name, searched, handcuffed, and taken around the corner to someone's apartment. The police asked the woman there, "Is this the man?" and she said that he was.

He had not been able to contact any of his family since his arrest.

*OPINION*

Defendant's first contention is that he was entitled to the police report concerning the Hights' descriptions of defendant for impeachment purposes. At the trial, while cross-examining Mrs. Hight, defense counsel learned that the police took down a statement at the time the Hights gave their descriptions to the police. Defense counsel immediately requested the report and the court ruled:

> "I am refusing the police reports, and the Court states on record that counsel is entitled to police reports if and when a policeman is called by either side for the purpose of impeachment, only at the time of cross examination."

Later, after the conclusion of the Hights' testimony at the time Officer Caccitolo testified, the State gave defense counsel a two-page police report. Officer Caccitolo testified that he had not made out the report, but that it was made by a beat officer, whose identity he did not remember. Defense counsel then again requested production, for impeachment purposes, of the original police report containing the statements, and particularly the descriptions, given to the police by the Hights. The court at that time directed the State to give the reports to defense counsel, and this was done. After reading the reports, defense counsel requested that Mr. Hight be recalled for additional cross-examination on the ground that the report contained information which contradicted the witness'

earlier testimony. The court denied the motion for the stated reason that the witness had not made the report himself, and could not, therefore, be held responsible for what the policeman had reported.

■■ The defense is entitled to the production of substantially verbatim statements by witnesses for impeachment purposes where "no privilege exists, and where the relevancy and competency of a statement or report has been established." (*People v. Wolff*, 19 Ill.2d 318, 327.) This rule includes the use, for impeachment purposes, of statements made by witnesses as recorded in police reports, such as in the instant case. (*People v. Moses*, 11 Ill.2d 84, 88-89.) No question of privilege was raised, and we think that the defense met its burden in demonstrating the relevancy and competency of the report for the purpose indicated. Where the State's case is based upon eyewitness identification, the witnesses' description as reported to have been given to the police a relatively short time after the incident, is certainly relevant, especially if it appears to contradict the testimony of a witness at the trial. (*People v. Moses, supra*, p. 89; *People v. Cagle*, 41 Ill.2d 528, 531-32.) We think, also, that where the defense has shown that the report purports to have been based on the witnesses' statement, as in the present situation, a sufficient showing has been made as to the report's competency. (See *Johnston v. United States*, 260 F.2d 345, 347.) In addition, the report was shown to have been contemporaneously recorded, and the officer who took the statement was not present at the trial.

The cases relied upon by the State in opposition to this point are distinguishable. In *People v. Durso*, 40 Ill.2d 242, 250, the court found that the police report was not competent because there was doubt that the report constituted a statement by the witness sought to be impeached thereby, as it may only have been a conglomerate of facts furnished by several persons. In *People v. Golson*, 37 Ill.2d 419, 422-23, the court found that no written report existed. Similarly, in *People v. Lanier*, 98 Ill.App.2d 89, 95, and *People v. Mitchell*, 106 Ill.App.2d 51, 53, there was no showing that the report existed at the time of the trial, and no timely motion for discovery of the records had been made.

■■ Finally, in relation to this point, the record indicates that the statement which was recorded contained the descriptions given by both Mr. and Mrs. Hight, and it was error not to allow defense counsel to use it in an attempt to impeach either or both of them. A "right sense of justice demands that it should be available" (*Moses, supra*, page 89), and the practicalities of a trial demand that it be made available in time for cross-examination of the witnesses in question, or the purpose of the rule is defeated. The tardy turn-over of the police report effectively deprived this defendant of its use, and, as stated in *People v. Cagle*, 41

Ill.2d 528, 533, "Merely giving defendant access to the report, while depriving him of the use of it, in no way constitutes compliance with the Illinois rule." And see, in particular, *People v. Cole*, 30 Ill.2d 375, 381, in which, as in the instant case, the State had failed to call as witnesses the police officers who had taken the statement in question. In reversing for a new trial, the Supreme Court held that this circumstance could not be relied upon by the prosecution to avoid the rule. We hold, therefore, that the trial court's error in this regard was of sufficient magnitude to make necessary the granting of a new trial.

We also believe that defendant was prejudiced by improper questioning on his own cross-examination, and by the prosecutor's comments in closing argument concerning the absence of defendant's brother as an alibi witness. See, e.g., *People v. Smith*, 74 Ill.App.2d 458, 463-64.

In view of our decision, we need not consider defendant's argument concerning alleged misstatements of the evidence by the prosecutor in closing argument.

■■ We find no merit in defendant's third contention, that his motion to suppress an in-court identification was erroneously denied. Even if it were true, as defendant contends, that there might have been a tainted identification when he was brought to the Hights' apartment, a prior adequate and independent basis for the in-court identification was shown on this record. See *People v. McMath*, 104 Ill.App.2d 302, 313, affirmed, 45 Ill.2d 33, *cert.* den.; and *People v. Cook*, 113 Ill.App.2d 231, 236-37.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

DRUCKER and LORENZ, JJ., concur.