THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GUSTAVO COLON, Defendant-Appellant.

(No. 58688;

First District (3rd Division)—June 20, 1974.

James J. Doherty, Public Defender, of Chicago (Harold A. Cowen, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Thomas Mauet, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Glenn Burr, a black youth, was shot and killed as he, his sister Theresa, his cousin Nathaniel Burr, and two friends, Verlinda Hamilton and Phyllis Taylor, were walking on a Chicago street. The young people had left the Burr home on north Leavitt Street on June 27, 1971, about 9:55 P.M. At the corner of Leavitt and Potomac, the defendant, Gustavo Colon, who was armed with a gun, and his friend Florentine Menendez, approached the group. Menendez pointed at Glenn Burr and said, "Shoot that black mother fucker." Glenn attempted to flee, but Colon shot him and discharged three more bullets into him after he fell to the ground. Colon then went up to Verlinda Hamilton, put the gun to her head, smiled, and pulled the trigger, but the gun did not fire.

Glenn was pronounced dead on arrival at St. Mary's Hospital. His companions gathered at the hospital, but only one of them described the murderer. The others provided descriptions within a few days and all four positively identified Colon as the killer.

A jury found Colon guilty of murder and he was sentenced to serve a term of 30 to 60 years in prison. He seeks reversal and remandment of his conviction based upon these asserted deprivations of his right to a

fair trial: (1) admission into evidence of prejudicial hearsay testimony; (2) foreclosure of defense attempts to impeach a key State witness; (3) consideration of incomptent evidence in aggravation, which resulted in the imposition of an excessively harsh sentence, and (4) ineffective representation by his counsel.

At the trial three of the eyewitnesses explained why they did not identify the slayer or give his description to the police at the hospital. Theresa Burr stated that she was hysterical on the night of the murder and could talk to no one. Verlinda Hamilton had seen Colon 11 or 12 times before the slaying and recognized him, but she said she had assumed that Nathaniel Burr would provide the information to the police. Nathaniel Burr said he spoke to police at the hospital, but was not asked for a description at that time and gave none. He returned home and told his mother that he knew who had done the shooting but feared reprisals if he talked. The police came to his home within a few hours and, persuaded that he had nothing to fear, he told them who had done the shooting and then selected pictures of Colon and Menendez from among at least 50 photographs. Phyllis Taylor, who had given a description to the police at the hospital, said that a few days later they brought a number of pictures for her to view; she selected one of Colon and identified him as the gunman.

Investigator James Acosta of the Chicago Police Department corroborated the testimony of the four occurrence witnesses relating to the time and circumstances of their identifications. He said that Nathaniel Burr, when reached at his home, had named Colon and Menendez, known to him by their nicknames "Hercules" and "Brillo," members of the Latin Kings gang, as the persons who had accosted his cousin; he described them and pointed out their photographs. Officer Robert Kaiser testified that he knew Colon and Menendez, and that on the day of the murder he had seen both men in the area of the shooting. He participated in the arrest of Colon, which took place on August 20, 1971. It was stipulated that Menendez had died before the trial.

Colon testified that he spent June 27 at his mother's home, working on a neighbor's automobile and then joined in a celebration in honor of his brother, Jose, who had just returned from the Army. Several persons testified in support of his alibi. The neighbor, Angel Jimenez, said Colon worked on his auto's transmission unitl 9:45 P.M. Jimenez said he went to the party and that he saw Jose Colon and 20 other persons there. Barbara McLemore, a friend of the defendant, said that he was not out of her sight on June 27 from 5 P.M. until she left the party at 11 P.M. She believed he stopped working on the car at 8:30. Daniel McLemore did not attend the party but drove to the Colon home to pick up Barbara,

his wife. He believed that the party was held on Saturday, June 26, not on Sunday the 27th. Carmen Falcon, Colon's sister-in-law, testified that she attended the party on June 27. She recalled that only five or six persons were present.

Jose Colon testified for the State in rebuttal. His testimony indicated that he was not at his mother's home in Chicago on June 27, 1971, or on any other day in the month of June. He stated that during the summer of 1971 he was absent without leave from his assigned Army post at Fort Dix, New Jersey. He did not remember the specific day he left the fort, but he said that on the day he departed he went to his father's house in Brooklyn, New York, where he stayed for 2 or 2½ months. Although he said that he worked on an automobile with his brother the day of his return to Chicago, he further stated that he arrived at his mother's home only one day before his brother's arrest.

Sergeant Lawrence Struck, a military policeman stationed at Fort Sheridan, Illinois, substantiated Jose's testimony. Struck's testimony, unobjected to by the defense, was that a personal check of the records of the Absentee and Deserter Information Center of Fort Benjamin Harrison, Indiana, revealed that Jose Colon was reported absent without leave from Fort Dix on May 28, 1971, and was classified as a deserter 1 month after that date. The defendant contends that it was plain error, of which this court should take notice, for the trial court to admit into evidence Struck's testimony. He asserts that the testimony was hearsay, that it violated the best evidence rule and that it "completely destroyed" his alibi.

■■■ The testimony complained of was hearsay and we do not doubt that it would have been ruled inadmissible if a timely objection had been made to it. If, as the defendant argues, this testimony utterly eviscerated his defense, then the doctrine of plain error might dictate a reversal and retrial, notwithstanding the failure of his counsel to object when the testimony was submitted. (Ill. Rev. Stat. 1971, ch. 110A, par. 615; see *People v. Wright* (1965), 65 Ill.App.2d 23, 212 N.E.2d 126.) If, on the other hand, in light of the entire record it is apparent that the testimony was not prejudicial, any error committed by its reception would not warrant reversal. (*People v. Pelkola* (1960), 19 Ill.2d 156, 166 N.E.2d 54.) Prejudicial error is most likely when the record shows a close factual situation. *People v. O'Connell* (1964), 30 Ill.2d 603, 198 N.E.2d 834.

■■ We cannot accept the defendant's estimate of the importance of this testimony. First, despite the number of witnesses who supported it, the story about the celebration to honor the return of a fugitive seemed contrived. The testimony contained contradictions concerning the date of the party, the number of persons present and the hour at which the

defendant ceased working on Jimenez' car. More important, the alibi was destroyed by the testimony of the defendant's own brother. The statements made by Struck were only cumulative and corroborative of Jose Colon's earlier testimony to the effect that he had not been in Chicago on the date of the gathering supposedly held to honor him. While he did not definitely state the date he came to Chicago, he did say that he went from Fort Dix to Brooklyn and stayed there for at least 2 months, and that he was there on July 4, 7 days after the defendant and his witnesses testified they celebrated his return home. He also stated that he did not see his mother and brother until the day before Gustavo's arrest, which was fixed by other witnesses at a date late in August 1971. Thus, the purported guest of honor at the party intended to establish the defendant's alibi had impeached the alibi witnesses before Struck uttered a word of testimony. Hearsay testimony has been held to be harmless where it merely repeats that which has already been proven by competent testimony. (*People v. Thompson* (1970), 128 Ill.App.2d 420, 263 N.E.2d 124; *People v. Smith* (1969), 105 Ill.App.2d 8, 245 N.E.2d 23.) Additionally, the prosecution's affirmative proof of guilt must be considered. Four witnesses, at least two of whom knew the defendant, by sight or nickname, viewed the shooting at close range, and were positive in their identification of him as the murderer.

■■ Notwithstanding this overpowering evidence of guilt, the argument is made that an appellate court should not second guess the jury and declare an error's effect to be harmless. This argument receives some support in the following statement from *People v. Rogers* (1932), 348 Ill. 322, 326, 180 N.E. 856:

> "* * * The court cannot speculate with the rights of a defendant, and say that the jury probably acted upon the competent evidence, only."

But the rule is qualified; it only obtains "Where the evidence is in conflict and there is incompetent and prejudicial testimony in the record * * *." The record contains sufficient competent evidence to establish Colon's guilt beyond a reasonable doubt. Struck's testimony, although damaging to him, was not prejudicially so and its admission was not reversible error.

The next contention is that the court erred in cutting short the attempts by the defendant's counsel to impeach Nathaniel Burr through proof of prior inconsistent statements. Two rulings are criticized. In the first, the trial court sustained the State's objection to defense counsel's attempt to question Burr concerning his testimony at the preliminary hearing. The exchange went as follows:

> "DEFENSE COUNSEL: Directing your attention again to Feb-

ruary 10, 1972, I will ask you if you remember this question and answer.

'Q. What description did you give of Gustavo Colon or the man you know as Hercules?

A. I gave him, kind of, you know stocky, chubby.

Q. Referring to myself, do I look chubby?

A. No.'

DEFENSE COUNSEL: Do you remember that answer?

ASSISTANT STATE'S ATTORNEY: Objection.

THE COURT: Sustained."

The defendant contends that he was entitled to an answer whether Burr had given such a reply at the preliminary hearing, because, armed with a denial, he might have called the court reporter to prove that the answer was indeed made. This, he assumes would have constituted an actual impeachment, since Burr in his earlier trial testimony had denied giving any description of Gustavo Colon to the police at the hospital.

■■■ A witness cannot be impeached on an immaterial matter. (*People v. Boulahanis* (1946), 394 Ill. 255, 68 N.E.2d 467.) Two requirements must be satisfied in order to lay a proper foundation for impeachment of trial testimony. The witness must first be questioned as to the time, place and persons involved in the alleged impeaching conversation; he must then be asked whether he made a certain contrary statement at that time. (*People v. Rainford* (1965), 58 Ill.App.2d 312, 208 N.E.2d 314.) The State properly argues that since Burr was never asked at the trial for a description of the defendant it was appropriate for the trial judge to sustain the objection to the use of a previous description, for reasons of immateriality and lack of a proper foundation.

■■ The defense attempts to finesse the question of relevance by claiming that the line of questioning was intended to develop the fact that, in spite of his denial of it at trial, Burr did give a description of the murderer to the police at the hospital on the night of the kiling. In other words, the objective was to bring out the fact that a description had been given, not to elicit the actual description itself. If this was indeed the attorney's aim, he did not explain his purpose. He did not protest the court's ruling; he simply dropped the matter. If the court was mistaken in its understanding of the route intended to be pursued by the interrogation, the attorney did nothing to correct the misinterpretation. In reviewing the ruling we cannot speculate on facts which do not appear on record. Even if we were to do so, it would not aid the defendant. The subject of the quoted exchange—a description of Gustavo Colon given prior to February 10, 1972—is not fixed in time or place. It might refer to any description of the defendant ever given by the witness. Thus, even if

the objection had been overruled and he had answered the question either negatively or affirmatively, his assertion that he gave no one a description at the hospital would not have been contradicted.

The second alleged interference by the court with the defendant's right to confront his accusers occurred when the court denied the defense motion to introduce a report taken at St. Mary's Hospital on the night of the murder by Officer Burns. The witnesses named in the report as having supplied its contents were Daniel Burr and Jimmy Harris. James Harris was in court, and testified that on the night of the shooting he went to St. Mary's, but gave his name to no one and did not discuss the shooting. Officer Burns was examined, and he could not state whether James Harris was the Jimmy Harris who had spoken to him at the hospital and he did not know if Daniel Burr was Nathaniel. The report was ruled inadmissible.

■■■ Where the State's case is founded on eyewitness identification, a witness' description as reported to the police shortly after the incident is relevant if it contradicts his trial testimony. However, a police report is not competent if doubt exists whether the statements were actually made by the particular witness sought to be impeached. (*People v. Durso* (1968), 40 Ill.2d 242, 239 N.E.2d 842.) The fact that a report contains statements by more than one witness does not alone vitiate its competence, since it may clearly attribute each statement to its source. Such was the case in *People v. Green* (1971), 133 Ill.App.2d 244, 272 N.E.2d 721. Here, on the other hand, inquiry by the court revealed that the report contained an amalgam of statements by two or possibly more persons. Officer Burns could not identify the witness Harris, nor specify the portions of the statement for which he was responsible. Thus, even assuming that Nathaniel Burr was the "Daniel" Burr named in the police report, it nevertheless remained impossible to isolate which statements were attributable to him. Since no witness could verify what statements if any had been made by either Harris or Burr, the police report was incompetent for impeachment purposes and the court properly refused to admit it.

■■ The defendant's appellate counsel suggests that the trial court meted out an unduly harsh punishment because it permitted itself to be influenced by Colon's gang affiliation. He argues that "[i]f the evidence is studied carefully, it will show a racial rather than a gang motivation for the shooting." The record does not support this interpretation of the court's reasoning. At the pre-sentencing hearing, the prosecutor mentioned that gang activity should be stamped out. The defendant's attorney then attempted to convince the court that the defendant became a member of the Latin Kings through intimidation. The court commented

that the defendant was not on trial for being a gang member, and added words to the effect that in any event duress is no excuse for murder. The evidence at the trial had shown that, far from displaying any reluctance or visible effects of intimidation, the defendant fairly reveled in the execution of his victim. He fired repeatedly into the body of Glenn Burr, and then casually held the gun to the head of Verlinda Hamilton, who was spared only because the killer's earlier zeal had emptied the weapon. No court would reasonably consider personal racial hatred, which appellate counsel tenders as a substitute for the purported gang motivation, a mitigating circumstance. There being no evidence that the court abused its discretion, the sentence will not be disturbed. *People v. Moore* (1971) 50 Ill.2d 24, 276 N.E.2d 319.

The charges pertaining to the ineffective assistance of the defendant's trial counsel parallel the points raised in this appeal: (1) failure to object to the rebuttal testimony of Sergeant Struck; (2) failure to investigate the central figure of the alibi defense—Jose Colon—before presenting the alibi to the jury; (3) failure to ask for a continuance to compensate for the surprise generated by Jose's testimony; (4) failure to take issue with the court's ruling against the impeachment of Nathaniel Burr through the use of his testimony at the preliminary hearing, and (5) failure to explain to the court the reason the name "Daniel Burr" appeared in the police report which the court refused to admit for impeachment purposes.

██ It has been held that an attorney's mistakes which frustrate an alibi defense may demonstrate incompetency. (*People v. Butler* (1973), 11 Ill.App.3d 759, 298 N.E.2d 303.) While the defendant's attorney was remiss in not objecting to Struck's testimony, we have already held that given the strength of the State's proof, the contradictory stories of the alibi witnesses and the harmful character of Jose Colon's testimony, the admission of Struck's testimony was not serious error. Counsel may well have been taken aback by the devastating effect of Jose's testimony and felt that Struck's could do little additional damage. The charge that he should have conducted an investigation of Jose—and hence the alibi—before placing the alibi in issue, implies that he was responsible for its going awry. The responsibility was not his, but his client's. If the alibi was false, the defendant knew it. The attorney had no obligation to seek out Jose and question him about his presence at the party or about the truth of Gustavo's statements.

There was no need to ask for a continuance following Jose's exposure unless there was something to be gained by it. The inference is that the defense required time to regroup its forces. Why and for what purpose

are not explained. It could not have been to prepare another alibi or a different defense; the die had been cast—the same jury would have had to pass judgment on the substitute. The attorney's tactical decision not to request postponement of the trial does not in any way indicate a lack of competence.

Since we have held that the court properly excluded Nathaniel Burr's testimony at the preliminary hearing and Officer Burns' report, we cannot find fault with the defense counsel for his failure to persuade the court to admit them.

■■ Evaluating an attorney's competence does not extend to those areas involving the exercise of judgment, discretion or trial tactics, even though other attorneys or the court itself might have chosen to act differently. (*People v. Martin* (1970), 44 Ill.2d 489, 256 N.E.2d 337.) Considering the facts of this case, the errors of judgment charged to the defendant's attorney cannot be said to have affected its outcome, much less to have denied the defendant reasonably effective assistance of counsel.

The judgment is affirmed.

Affirmed.

McNAMARA, P. J., and McGLOON, J., concur.