THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SONNY BACHMAN, Defendant-Appellant.

Third District    No. 80-179

Opinion filed January 7, 1981.

Michael J. Costello, of Costello & Woody, Ltd., of Springfield, for appellant.

James E. Hinterlong, State's Attorney, of Ottawa (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendant, Sonny Bachman, after trial by jury by the Circuit Court of La Salle County, was found guilty of raping and unlawfully restraining the complainant, Stephanie Parkinson. A sentence of 20 years was imposed on the conviction for rape and a two-year sentence on the conviction of unlawful restraint. The sentences were to run concurrently.

Stephanie Parkinson, age 21 and a resident of Canada, was hitch-

hiking in the United States with a friend, Monique Lorieau. The defendant, age 41, married, father of an 11-year-old son, and a resident of the State of Colorado, was a cross-country truck driver. The evidence adduced at the defendant's trial is in some instances conflicting; however, it is established that Parkinson and her friend Lorieau first met the defendant at approximately 4:30 p.m. at the Cross-Roads Truck Stop in Calumet, Indiana. Parkinson and Lorieau had dinner, drank some beer and smoked marijuana with the defendant. The three individuals after this activity then slept in the defendant's truck. The following morning the parties had breakfast together, after which Parkinson and Lorieau went to a restroom and changed from pants and shirts to shorts. There was evidence to the effect that Parkinson did not wear a bra and that her appearance was to some degree provocative. During breakfast a truck driver, Stan Tittman, made his appearance. Tittman had known the defendant for some time, but apparently they were not close friends. As the result of the defendant's assertions that three people couldn't ride in one truck and with the cooperation of Tittman it was arranged that Parkinson would ride with him and that Lorieau would ride in Tittman's truck. The separation was to be of short duration, some 15 or 20 minutes, and that they would meet each other at a loading dock. It is not clear as to how long Parkinson and Lorieau were separated but it was a matter of some hours.

After Bachman left the truck stop he drove around and eventually went into a bar by himself. When he returned to his truck he informed Parkinson that he wouldn't be able to pick up his load until the following day. He informed Parkinson that they were going to Marseilles (Illinois) to pick up some chicken and then to go boating. After driving around the country area the defendant pulled off the road near a small building. Parkinson testified that the defendant got out of the truck and reentered it on the passenger side, grabbed her by the neck and informed her that she was going to have sex with him. She further testified as to the defendant's use of a four letter word, that she was choked and was informed by the defendant that he had committed such an act four or five times and liked it that way. It was Parkinson's further testimony that in an effort to delay the defendant she suggested that they leave the truck. The defendant agreed and they went to a corn crib and after being hit on the jaw she was placed on the ground and raped twice.

The defendant's testimony was that he had one act of sexual intercourse with Parkinson and that she was a willing participant.

After the sexual activity the defendant fell asleep and Parkinson fled to the closest house and asked the proprietress if she would call the police. The police were called, and approximately 25 minutes later the defendant was taken into custody. At this time the defendant denied having intercourse with Parkinson.

Testimony established that after the incident Parkinson had trouble breathing, swallowing and talking. There was medical testimony that there was redness around Parkinson's throat and on the lumbar area of her back. A medical examination was conducted and a specimen taken from Parkinson's vagina disclosed that sperm was present and Dr. Tomas testified that at some point within 48 hours from the time he conducted his examination spermatozoa had been introduced into the vagina of Parkinson.

During the course of the trial the prosecutor was permitted to propound the following question to Parkinson:

"Q. Is there any reason why you wouldn't consent to have intercourse with Sonny Bachman?

A. I didn't want to. And I had cyrosurgery in July for surgical [sic] cancer and I have been advised by my doctor not to have intercourse."

We have attempted to summarize the facts as derived from the testimony and which we deem to be essential to this appeal. In addressing the issues presented for determination a recitation of additional facts will be set forth as they become pertinent.

The defendant first argues that the trial court erred in entering convictions for both rape and unlawful restraint. The People concede, and we believe correctly so, that there were not two acts committed which were sufficient to support convictions for both rape and unlawful restraint. See *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

The defendant next asserts that the testimony of the victim Parkinson that her doctor told her not to have sexual intercourse was so prejudicial as to deny him a fair trial.

■■ The complained-of testimony is classified by the defendant as being hearsay and consequently was inadmissible. We first note that this issue has been waived by the defendant. The testimony when offered at trial was objected to by defense counsel on the grounds of being leading, suggestive and repetitive. There was no objection on the grounds of hearsay. Timely objection to alleged hearsay statements must be made at trial and cannot be raised for the first time on appeal. (*People v. Davis* (1970), 126 Ill. App. 2d 114, 261 N.E.2d 428.) It should further be noted that defendant did not make an objection to the complained-of testimony in his post-trial motion, and consequently this issue has been waived on appeal.

The People argue that the victim's testimony concerning what her doctor told her was not hearsay since it was admitted to show her intent at the time of the alleged crime. This argument is indeed a tenuous one; however, it is not necessary for the disposition of the issue being considered to determine whether the testimony was or was not hearsay

testimony. For purpose of argument only we will assume that the testimony was hearsay and that it would have been ruled inadmissible if a timely objection had been made to it on the grounds of hearsay. Making this assumption, we are then confronted with the question as to whether the testimony was so prejudicial as to eviscerate the defendant's defense. If such, was the result then the doctrine of plain error might dictate a reversal and retrial notwithstanding defense counsel's failure to make a proper objection at the time the testimony was submitted. (Ill. Rev. Stat. 1979, ch. 110A, par. 615.) If, however, from an examination of the entire record it is apparent that the complained of testimony was not so prejudicial, then any error committed by its reception would not warrant reversal. *People v. Colon* (1974), 20 Ill. App. 3d 858, 314 N.E.2d 664.

An examination of the record discloses that the complained of testimony was cumulative and not eviscerating as to the defendant's defense. Without such testimony there was ample evidence to support the jury's verdict of guilty. The record establishes that the defendant met the victim and her companion at a bus stop and offered to give them a ride. The defendant admitted that he enlisted the aid of another truck driver in order to separate the girls. He drove the victim to a secluded rural area and he admits that he performed an act of sexual intercourse with her, but contends that the act was performed with the consent of the victim. The defendant's defense of consent was weakened if not shattered by evidence supporting the victim's testimony that she fled from the defendant after being hit, choked and raped. Medical testimony confirmed the fact that intercourse had occurred, that the victim's throat was red and her voice was hoarse. We do not agree with the defendant's contention that the victim's testimony as to what her doctor told her was so prejudicial that he would not have been found guilty but for such testimony. The testimony was cumulative and not so prejudicial as to trigger the doctrine of plain error.

The defendant also contends that the trial court erred in instructing the jury with a non-IPI instruction which defined the necessary resistance of a rape victim. The complained of instruction reads as follows:

> "Resistance on the part of a rape victim is not necessary if the act of resistance would be futile or would endanger her life or if she is overcome by superior strength or paralyzed by fear." People's Instruction No. 12.

The defendant's objection to this instruction is threefold: first it is his argument that Illinois Pattern Jury Instructions, Criminal, Nos. 9.01, 9.02 and 9.03 (1968), which the court gave adequately instructed the jury; secondly, defendant further objects to People's Instruction No. 12 by asserting that it was incomplete since it did not include the phrase "the amount of resistance necessary is for you to determine"; third, the

defendant objects to People's Instruction No. 12 by arguing that if a resistance instruction was necessary the following should have been given:

"No definite standard fixes the amount of resistance which must be offered and resistance is not necessary when it would endanger the victim's safety or where she is overcome by superior strength or paralyzed by fear."

The record discloses that as to the latter two objections raised by the defendant in this appeal, he did not specifically raise these objections during his trial or in his post-trial motion. The record also shows that the defendant did not tender those additions which in this appeal he argues were proper and should have been part of People's Instruction No. 12. As the result of the defendant's inaction as to the latter two objections he has waived any right to have them considered in this appeal. *People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513.

We will consider his remaining objection in that the trial court erred in giving a non-IPI instruction. IPI instructions in criminal cases are favored; however, if the trial court concludes that the pattern instructions do not contain an instruction on a subject upon which the jury should be instructed, then a non-IPI instruction which is brief, impartial, and free from argument may be given. Ill. Rev. Stat. 1979, ch. 110A, par. 451.

No error is committed in instructing a jury on the issue of resistance where there is evidence that the victim was threatened and intimidated. (*People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164.) It is incontestable that in the instant case there was evidence that the victim was threatened and intimidated by the defendant.

The complained-of instruction in the instant case is almost identical to the non-IPI instruction which our supreme court approved in the case of *Robinson.*

The defendant also argues that the trial court erred in tendering a *Prim* instruction when the jury was not deadlocked and made comments to the jury at such time which made a conviction a certainty.

In the instant case the jury received the case for deliberation at 3:35 p.m. From 5:35 p.m. to approximately 7:10 p.m. the jury was out for dinner. At 10 p.m. the jury submitted to the trial court a communication which contained some questions. The court then tendered to the jury the *Prim* instruction. See *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601.

It is not the defendant's position that the *Prim* instruction was improper in form, however, it is his position that the instruction should not have been given.

Cases vary as to their complexity, so there is no hard and fast rule as to how long a jury should have deliberated before a *Prim* instruction can or should be given. In the instant case the trial of the defendant consumed

less than 2½ days. Three counts were pending against the defendant, but the single issue to be determined was whether or not the victim had consented to an act of intercourse. It would be unrealistic to conclude that the case was a complex one, and hence the trial court did not abuse its discretion by giving the instruction. See *People v. Longstreet* (1974), 23 Ill. App. 3d 874, 320 N.E.2d 529; *People v. Preston* (1979), 76 Ill. 2d 274, 392 N.E.2d 359; *People v. Broadnax* (1974), 23 Ill. App. 3d 68, 318 N.E.2d 499.

At the time of giving the *Prim* instruction the court stated to the jury that they should do their best to reach a verdict on each of the three charges. If the jury was unable to do so, the court instructed the jury to consider that they may be unable to reach a verdict on any one of the charges. The defendant argues that the trial court never advised the jury that they could find the defendant guilty or not guilty on each or any of the verdicts. This argument of the defendant presupposes that the jury was unaware of the fact that they could find the defendant not guilty as well as guilty. The defendant in presenting this argument ignores the fact that the jurors had before them verdict forms which on their face informed the jury that their verdict could be either guilty or not guilty. As we read the trial court's statement, it asked the jury to attempt to reach a verdict on all three charges but if they could not do so they were informed that they might be able to reach a verdict on one or two counts of the indictment. We cannot and do not conclude that the law was misstated, that the jury was confused, or that it was in any way indicated by the trial court that the jury's verdict or verdicts could only be guilty.

The defendant asserts that the "Rape Shield" statute is unconstitutional. He is referring to section 115—7 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 115—7), which precludes a defendant from questioning a victim about her prior sexual activity with someone other than the defendant. We find no merit in the defendant's attack on the statute since it has twice been held constitutional. See *People v. Cornes* (1980), 80 Ill. App. 3d 166, 399 N.E.2d 1346; *People v. Dorff* (1980), 77 Ill. App. 3d 882, 396 N.E.2d 827.

The defendant next argues that the 20-year sentence imposed by the trial court constitutes cruel and unusual punishment because the court considered improper evidence.

Specifically, it is defendant's position that the court should not have considered a letter from the victim which set forth the effect the rape offense had upon her. In this letter the victim stated that she had nightmares, that she was afraid the defendant would kill her, and that she suffered from flashbacks pertaining to the rape. The defendant in his brief makes two significant admissions. First he admits that section 5—3—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38,

par. 1005—3—2), requires that a presentence report set forth the effect of an offense upon a victim and, secondly, he admits that hearsay is admissible in a presentence report. The defendant is apparently contending that the victim's statement concerning nightmares, fears, and flashbacks should have been corroborated by a physician. Where would a physician obtain such knowledge? There is only one possible source, and that source is statements made by the victim. The defendant is complaining of statements made by a victim and this court poses a quaere, to-wit, would the identical statements made by a victim to another party who in turn relates them to the trial court better serve the defendant? To answer this quaere in the affirmative would defy sound reasoning and logic. A physician submitting the victim's statements could add nothing to their credibility, and hence the court did not err in considering the statements presented in correspondence from the victim.

The defendant also argues that the court erred in not considering revelations made by him to a psychiatrist. During the sentencing hearing the court ordered a psychiatric examination of the defendant. In a written evaluation submitted by the psychiatrist to the court it is revealed that the defendant had admitted prior arrests and convictions. He admitted that at age 19 he was arrested for attempt rape but that this charge was reduced to aggravated assault and that he was sentenced to one year probation and 30 days incarceration. He charged this incident up to the fact "that a bunch of us kids went out drinking." He further admitted that in California a prostitute tried to charge him with rape, but that matter was cleared up when he was fined $150 for aggravated assault. As to the instant case, he explained his difficulty with the victim by characterizing her as a hitchhiker who was smoking a lot of dope who "got worried about being busted with dope she smuggled in from Canada and she hollered rape."

The trial court did consider the conclusions of the psychiatrist that the defendant was of average intelligence and that there was no evidence of mental illness. The court did not consider the defendant's admissions to the psychiatrist concerning the circumstances of his prior crimes. We fail to see how he logically can complain because statements could only be prejudicial to him.

■■ The record indicates that the defendant had four prior convictions, to wit, a 1959 charge of aggravated battery for which he was sentenced to 30 days' incarceration and one year probation, a 1972 conviction for criminal damage to property for which he was fined $25 plus costs, convictions for traffic violations in 1973 including drunken driving for which he was fined $375, and in 1975 he pleaded guilty to aggravated battery and was fined $100 plus costs. These are the convictions the court considered. Had the court considered the statements made by the

defendant to the psychiatrist, then consideration would have been given to the fact that the two aggravated assault charges resulted from attempt rape charges were reduced, and hence he was not prejudiced by the court's conduct.

It is apparent that the defendant has a propensity for committing sex crimes coupled with violence. In the light of the recent supreme court case of *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541, the sentence received by the defendant should not be disturbed unless this court determines that the trial court abused its discretion. In light of the defendant's prior record and his violent actions in the instant case we find no such abuse.

Lastly the defendant argues that he was not proved guilty beyond a reasonable doubt. We disagree; however, we will not make a further analysis of the evidence since we have already done so in considering other issues raised by the defendant.

For the reasons set forth the defendant's conviction and sentence for the offense of rape are affirmed and his conviction and sentence for the offense of unlawful restraint are reversed.

Affirmed in part and reversed in part.

ALLOY, P. J., and STOUDER, J., concur.