THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES ANDREWS *et al.*, Defendants-Appellants.

First District (3rd Division)    Nos. 80-226, 80-229 cons.

Opinion filed November 12, 1981.

Ralph Ruebner and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Adrienne Noble Nacev, and Adam N. Stillo, Jr., of counsel), for the People.

Mr. JUSTICE WHITE delivered the opinion of the court:

Following a jury trial, defendants James Andrews and Leonard Alexander were found guilty of robbery, and sentenced to terms of 4½ years and 5½ years respectively in the Illinois Department of Corrections. At trial, Ida Meyers, the victim, testified that she worked on the counter at Harold's Chicken Shack and that on August 11, 1978, shortly after midnight, three men entered the establishment. One, whom she described as light-skinned, came to the counter and ordered a half a chicken. Another, described by her as dark and short stood near the rear door that led to the work area. The third she described as dark and tall. She said that it took about 10 minutes to cook the chicken. When she finished the order, the light-skinned man ordered two bottles of soda pop. Meyers testified that she went to the work area to get the soda pop, and as she was doing so the two dark men rammed the door, knocking it down and jamming her into the pop machine. The short, dark man grabbed her around the neck while the tall, dark man took about $370 from the cash register. A week later, Meyers again saw the two dark men in the vicinity of the Chicken Shack and called the police. She pointed out the defendants, and they were arrested. In court she identified defendant Andrews as the man who grabbed and held her, and defendant Alexander as the man who rifled the cash register. This identification was corroborated by Henry Kyles who testified that it was he, not his brother Sylvester, who entered the Chicken

Shack while the robbery was in progress. In sum, both witnesses testified that the robbery was committed by two dark men. The police report of the incident contained a different description stating that one of the robbers was light in complexion with a beard and a mustache. The report listed Ida Meyers as the victim and Sylvester Kyles as a witness. Defense counsel sought to use this information to impeach both Meyers and Kyles and called to the stand the police officers who made the investigation and prepared the report. The police officers as witnesses suffered a loss of memory and could not recall who gave them the description contained in the report of the light-skinned offender: Meyers or Kyles, or indeed some third person. In their frustration, defense counsel sought to refresh the recollection of the officers but to no avail. They then sought leave of court to cross-examine the police officers on the basis of surprise. This was denied. Likewise they asked that the police report itself be admitted into evidence as past recollection recorded to impeach Meyers or Kyles. This was also denied. It appears from the voir dire examination of Officer Havelka that the police report states Ida Meyers gave the reporting officers the descriptions of the two offenders:

"MR. REARDON [defense counsel]: Does the report in fact say in the section entitled narrative, 'Reporting officers,' abbreviated R.O.'s, 'informed by the manager of Harold's Chicken, Ida Meyers, that the two offenders entered the store and ordered chicken. While Mrs. Meyers turned her back to get a bottle of pop for one of the offenders, the offender one checked down the store's door leading to the kitchen where Mrs. Meyers was working. Both offenders entered the area and while the number two offender held Mrs. Meyers around the neck, the number one offender removed cash from the cash register. Both offenders then fled northbound on State.'

'Also witnessed by Sylvester Kyles.' Now, are those words contained in the police report that you and your partner have both signed and you have reviewed and found to be accurate?

A. Yes.

Q. You reviewed this report at the time of the incident when you signed it, did you not?

A. Yes.

Q. And at that time you found the report to be accurate and to describe your experience as you have narrated it here?

A. Yes.

Q. And further the report contains under the offender's name column a description of offender number one and that offender number one, the same offender who is referred to in the report as being spoken about by the manager of Harold's Chicken Shack,

Ida Meyers, that offender number one is in fact described as male Negro, age 22 to 24, height six foot one, weight 175 pounds; eyes brown; hair, black; complexion, light, beard and mustache, and wearing blue sweater, white horizontal stripes, blue jeans?
A. Yes."

■■ The trial court refused to admit the report into evidence, because "the report itself comes from sources quite possibly other than the witnesses that are sought to be impeached." Defendants-appellants maintain that this ruling was erroneous and we agree. The most effective and most frequently used attack upon the credibility of witnesses is proof of a prior inconsistent statement. The question here is, was the police report competent evidence of such prior statements. Illinois courts do not admit police reports into evidence as substantive evidence of the facts related herein. Such reports, however, may be used for the limited purpose of impeachment. (*People v. Morris* (1978), 65 Ill. App. 3d 155, 382 N.E.2d 383.) Here the report was offered not as substantive evidence, but to impeach by showing what was said to the investigating officers. The rule permitting the introduction of past recollection recorded has four requirements which must be met: "(1) the witness must have had firsthand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event and while the witness had a clear and accurate memory of it, (3) the witness must lack a present recollection of the event, and (4) the witness must vouch for the accuracy of the written memorandum." (*People v. Skidmore* (1978), 56 Ill. App. 3d 862, 865, 372 N.E.2d 723, *cert. denied* (1978), 439 U.S. 912, 58 L. Ed. 2d 258, 99 S. Ct. 282; *People v. Munoz* (1975), 31 Ill. App. 3d 689, 693, 335 N.E.2d 35; McCormick, Evidence §299, at 712 (2d ed. 1972).) This record has evidence supporting each of these requirements. Both officers at the time of making the report had firsthand knowledge of what the witnesses had told them. The report was made shortly after the interviews while they still had a clear memory of what was said, but at the time of trial they did not. Lastly, both testified that the report was accurate when written. The report was admissible as past recollection recorded.

■■ The trial court ruled, however, that since the police officers could not say definitely that the information in the report came from Kyles or from Meyers, it could not be used to impeach either of them. The State in support of this ruling cites *People v. Colon* (1974), 20 Ill. App. 3d 858, 314 N.E.2d 664. In that case, the defendant sought to introduce a police report to impeach Nathaniel Burr, a prosecution witness. The report contained an amalgam of statements by two or more persons, and it named Daniel Burr and Jimmy Harris as the witnesses who supplied its contents. The police officer who had taken the report could not state the portions of the report for which Harris was responsible. The appellate court held that

even assuming that Nathaniel Burr was the Daniel Burr named in the police report, the police report was incompetent for impeachment purposes because it was impossible to isolate which statements in the report were attributable to the witness. The court specifically distinguished the situation where a police report contains statements by more than one witness, and it clearly attributes each statement to its source. Here the report itself identified Ida Meyers as a source of the descriptions. The report with its description of one offender having a light complexion should have been admitted to impeach Meyers' testimony that both offenders had dark complexions. Identification was the critical issue of the case. The wrongful exclusion of the impeachment evidence requires that the convictions be reversed and the case be remanded for a new trial.

Two other points were raised by defendants-appellants: that the trial court should have allowed cross-examination of a witness because of surprise, and that the trial court abused its discretion in refusing to consider a juror's post-trial statement and denying a motion for a new trial. In view of the ruling above, we do not decide these issues.

Reversed and remanded.

RIZZI, P. J., and McGILLICUDDY, J., concur.