PAMELA ROESEKE, Plaintiff-Appellee, v. GREGORY PRYOR *et al.*, Defendants-Appellants.

First District (4th Division) No. 86—0012

Opinion filed February 11, 1987.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom, Charles P. Menges, and Shaun McParland, of counsel), for appellants.

John G. Phillips & Associates, of Chicago (John G. Phillips, Kenneth R. Nix, and John F. Klebba, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Defendants, Gregory Pryor and Marriott Corporation (referred to collectively as the defendants), bring this appeal seeking reversal of a jury's verdict in favor of plaintiff, Pamela Roeseke, and against the defendants. Roeseke sued the defendants after she was struck and seriously injured in an accident involving a van being driven by defendant Pryor.[1] After a full trial on the merits, the jury determined that Roeseke had suffered $500,000 in damages. However, the jury also found that Roeseke had been 33% comparatively negligent. That being the case, judgment was entered in favor of Roeseke in the amount of $335,000.

The defendants now bring this appeal contending: (1) that the trial court erred in failing to direct a verdict in favor of the defendants or, in the alternative, in failing to grant the defendants' motion for a judgment notwithstanding the verdict; (2) that the trial court erred in granting Roeseke's motion *in limine* barring certain testimony by a witness; (3) that the trial court erred in making certain rulings relative to a missing report allegedly compiled by a manager for Marriott Corporation; and (4) that the jury's verdict finding Roeseke to be only 33% comparatively negligent was against the manifest weight of the evidence.

We affirm.

BACKGROUND

The record reveals that this lawsuit arose from an accident which took place on November 10, 1979. The accident involved 18 to 22 vehicles and occurred on the Kennedy Expressway in suburban Cook County near O'Hare Airport. Those testifying at trial included the plaintiff, Pamela Roeseke, the defendant-driver, Gregory Pryor, several other drivers and passengers involved in the accident, and a policeman who arrived at the scene of the accident subsequent to its occurrence.

---

[1]The liability of defendant Marriott Corporation was vicarious, as Pryor was acting within the scope of his employment at the time of the accident.

Defendant Pryor testified that he was employed by the Marriott Corporation as a bellman and driver. Pryor's duties included, *inter alia*, transporting Marriott customers from O'Hare Airport to the hotel. On the night of the accident, he was traveling between the Marriott Hotel and O'Hare Airport.

Pryor testified that he did not know the bridge (on which the accident occurred) was icy. He stated that as he approached the bridge, he saw a white auto in front of him that appeared to be parked. As he came upon the vehicle, he applied his brakes. At that point, however, Pryor lost control of his van. The van began sliding sideways and eventually collided with the white auto. The white auto was being driven by Barbara Dorenzo. Pryor asserts that he did everything possible to control his van prior to the collision with Dorenzo's vehicle. After the collision, Pryor's van rested perpendicular to traffic.

Barbara Dorenzo also testified about the accident. Dorenzo stated that as she approached the bridge, she experienced slippery conditions. She immediately began pumping her brakes. As she was attempting to slow down, however, Pryor's sliding van collided with her car pushing it into the guard rail. Dorenzo testified that she never lost control of her vehicle prior to being hit by Pryor's van.

This initial collision between Pryor's van and Dorenzo's vehicle constituted the first mishap of an apparent chain-reaction collision, ultimately resulting in Roeseke's injury.

Plaintiff Roeseke testified that she was driving in a westerly direction along the Kennedy Expressway prior to the accident. The weather was cold and damp and the temperature was near freezing. Roeseke then exited Kennedy and began driving along the Kennedy extension. As she came upon a bridge, however, she noticed several stationary vehicles in front of her. The vehicles were stopped in both lanes of traffic. One of these vehicles was the van being operated by Pryor.

Roeseke testified that she was able to safely stop her vehicle even though the road conditions were icy. She claimed that she was able to stop her car by lifting her foot off the gas pedal and by slowly pumping her brakes. Roeseke's vehicle came to a halt without hitting any other car and without coming into contact with the guard rail.

It was not raining or snowing at the time that the Roeseke vehicle came to a halt. As Roeseke was turning her car's engine off, however, her vehicle was struck by another car.

Several other people involved in the accident also testified. In general, each of these witnesses' testimony was the same, namely, that the road conditions were icy and that they had lost control of

their vehicles, thereby resulting in their vehicles being added to those already involved in the bridge pileup.

Raymond Coffey also testified. Coffey was the manager on duty at the Marriott Hotel where Pryor worked. Coffey arrived at the scene of the accident after Pryor had phoned him.

Following Coffey's inspection of the accident, he prepared a "Manager on Duty" report. This was a standard report typically completed by the manager in charge of the Marriott Hotel when an incident such as the aforementioned automobile accident occurs. Coffey completed the report (which contained his findings and summary of what happened) and forwarded it to his superior. After that, however, the report could not be located even though it had been requested by Roeseke.

One of the policemen who was called to the scene of the accident after it occurred also testified. Officer Stachula's testimony is of importance, not so much for what he affirmatively stated, but rather for what he was barred from saying. When Officer Stachula and his partner completed their investigation of the accident, they compiled a police report. The report contained information that both Stachula and his partner had gathered from various people at different places and at different times. (See discussion *infra*.) Pursuant to Roeseke's motion, the trial court barred Officer Stachula from revealing certain portions of the report.

Following the accident, Roeseke's leg had to be amputated. She later filed this suit against, among others, Pryor and his employer, Marriott Corporation. Roeseke alleged that Pryor had operated his vehicle negligently, thereby leading to the initial collision with Dorenzo's car. Roeseke further claimed that but for Pryor's initial collision with Dorenzo's car, she would not have had to stop her vehicle and would not have been subsequently injured.

The jury returned a verdict in Roeseke's favor, and the defendants now bring this appeal.

OPINION

I

We first address the defendants' claim that the trial court erred in failing to direct a verdict in their favor at the close of the plaintiff's case or, in the alternative, in failing to grant a judgment notwithstanding the verdict (*n.o.v.*). It is the defendants' position that a directed verdict or a judgment *n.o.v.* should have been entered because: (1) Roeseke's injury resulted from an "unavoidable accident" rather

than from any negligence on the defendants' part; and/or (2) that even if Pryor was negligent, nevertheless, the intervening and superceding negligence of Roeseke and others was the true and proximate cause of Roeseke's injury.

■■■ A verdict should be directed and/or a judgment *n.o.v.* should be granted only in those cases in which all of the evidence, when viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) In so doing, it is not the court's function to determine the credibility of witnesses (*Bartolomucci v. Clarke* (1965), 60 Ill. App. 2d 229, 208 N.E.2d 616), nor are we to substitute our judgment for that of the jury (*Morse v. Johnson* (1980), 81 Ill. App. 3d 552, 401 N.E.2d 654). Instead, we are required to consider all of the evidence, together with any reasonable inferences which might be drawn therefrom, in a view most favorable to the plaintiff. (*Schoen v. Harris* (1969), 108 Ill. App. 2d 186, 246 N.E.2d 849.) In addition, a trial court's decision denying a directed verdict or a judgment *n.o.v.* will be overturned only where that decision is contrary to the manifest weight of the evidence. *Hemken v. First National Bank* (1979), 76 Ill. App. 3d 23, 394 N.E.2d 868.

In the case at bar, defendant Pryor admitted that the weather conditions on the night of the accident were poor, that he had traveled the particular section of bridge (on which the accident occurred) many times previously, and that he lost control of his vehicle and thereafter collided with the auto being driven by Dorenzo. After Pryor collided with the Dorenzo vehicle, the two vehicles came to rest perpendicular to the roadway, thereby blocking traffic. It was because the roadway was blocked that plaintiff Roeseke was forced to stop her vehicle. Soon thereafter, another vehicle collided with Roeseke's auto, resulting in Roeseke suffering serious physical injuries.

However, several witnesses, including Roeseke and Dorenzo, testified that they never lost control of their vehicles even though they were driving under the same conditions and over the same strip of bridge as Pryor. Roeseke, in fact, was able to bring her vehicle to a complete stop without any problem even though she was driving at the same speed as Pryor.

Thus, it appears that there was contradictory evidence regarding whether drivers could, under the circumstances presented, control their vehicles on the night of the accident. Defendant Pryor testified that he lost control of his vehicle even though he did all that he could to drive carefully. Other witnesses, on the other hand, testified that

they were able to control their vehicles regardless of the icy conditions that evidently existed.

■■ Under these circumstances, we agree with the trial court that it was properly left for the jury to decide who was at fault and to what degree. While we agree with the defendants that the mere happening of an accident does not raise an inference of negligence (See, *e.g.*, *Bradley v. Thomas M. Madden Co.* (1947), 333 Ill. App. 153, 76 N.E.2d 797 (abstract of opinion)), we believe that, based on the facts presented, a jury could find that Pryor's negligence in losing control of his vehicle triggered a chain of events which ultimately lead to Roeseke's injury.

In addition, whether the mishap resulting in Roeseke's injury can be classified as an "unavoidable accident," as the defendants' assert, is a matter best left for the jury to decide. (See *Hayes v. Alsburg* (1977), 52 Ill. App. 3d 355, 367 N.E.2d 568.) In the present case, the trial court instructed the jury that, in order to find for the plaintiff, they (the jury) must determine that, based on a preponderance of the evidence, Roeseke's injury proximately resulted from defendant Pryor's carelessness. The trial court also instructed the jury, however, that if they found that Pryor was not negligent, they were obligated to rule in Pryor's favor. The jury viewed the evidence, adjudged the credibility of the witnesses, and decided against Pryor. We cannot find that this determination was against the manifest weight of the evidence.

■■ The jury instruction addressing the occurrence of an "unavoidable accident," Illinois Pattern Jury Instruction, Civil, No. 12.04 (2d ed. 1971), (hereinafter IPI Civil 2d), should only be given where there is evidence tending to show that the plaintiff was injured through accident *alone* not coupled with negligence. (*Streeter v. Humrichouse* (1934), 357 Ill. 234, 191 N.E. 684.) Indeed, it is reversible error to instruct the jury as to an "unavoidable accident" where there is *any* evidence tending to prove that the plaintiff's injury resulted from negligence. (*Wolpert v. Heidbreder* (1959), 21 Ill. App. 2d 486, 158 N.E.2d 421.) As set forth above, there was evidence from which the jury could find that Pryor was negligent in the handling of his van. Accordingly, the trial court was correct in refusing to give the "unavoidable accident" instruction.

■■■ We next address whether there was a subsequent intervening and superceding cause sufficient to cut off the defendants' liability for Roeseke's injuries. The defendants assert that it was Roeseke's negligence or the negligence of the other drivers who subsequently became involved in the collision that constituted the true proximate cause of Roeseke's injuries.

The question of proximate cause, in a negligence case, is generally one for the jury to decide. (*Ozment v. Lance* (1982), 107 Ill. App. 3d 348, 437 N.E.2d 930.) A jury's findings will be upheld unless those findings are contrary to the manifest weight of the evidence. (*Jones v. Chicago Transit Authority* (1959), 23 Ill. App. 2d 504, 163 N.E.2d 546 (abstract of opinion).) With regard to a third party's acts, the subsequent act of a third party does not break the causal connection between a defendant's negligence and a plaintiff's injury where that subsequent act was probable and foreseeable. (*Thiessen v. Wabash R.R. Co.* (1963), 41 Ill. App. 2d 238, 190 N.E.2d 498 (abstract of opinion).) Rather, to escape liability, a defendant must demonstrate that the third party's act was unforeseeable as a matter of law. *Bak v. Burlington Northern, Inc.* (1981), 93 Ill. App. 3d 269, 417 N.E.2d 148.

■ Applying those standards to the facts of the present case, we are unable to find error with the jury's determination that Pryor's initial negligence (losing control of his van such that he collided with Dorenzo's vehicle) led to a chain reaction, ultimately resulting in Roeseke's injury. It is evident from the record that it was Pryor's initial collision which set the stage for the multiple-vehicle pileup that followed. In light of the fact that the accident occurred at night and that the speed limit on that stretch of highway was 55 miles per hour, it is foreseeable that other vehicles could become involved in the mishap. Although it is true that the jury could have found differently based on the evidence before it, we cannot find, as a matter of law, that the collisions following Pryor's were so unforeseeable that the defendants should be released from all responsibility for Roeseke's accident. Hence, we reject the defendants' claim that Pryor's negligence was not the proximate cause of Roeseke's injury.

## II

■ The defendants' second argument attacks the trial court's decision to bar Officer Stachula from tendering certain testimony. The trial court barred Officer Stachula from disclosing certain statements allegedly made by Dorenzo that were contained in a police report compiled by Stachula and his partner. The officers prepared the report following the accident. It is the defendants' position that the trial court should have allowed the statements to be introduced under the doctrine of past recollection recorded.

In Illinois, evidence may be admitted under the doctrine of past recollection recorded where: (1) the witness had firsthand knowledge of the recorded event; (2) the written statement was made at or near the time of the event and while the witness had a clear and accurate

memory of it; (3) the witness lacks present recollection of the event; and (4) the witness can vouch for the accuracy of the written statement. (*People v. Andrews* (1981), 101 Ill. App. 3d 808, 428 N.E.2d 1048.) Critical to the use of the past-recollection-recorded doctrine is that the testifying witness have "firsthand" or personal knowledge of the events disclosed in the report. *People v. Colon* (1974), 20 Ill. App. 3d 858, 314 N.E.2d 664.

■■ In the case at bar, Officer Stachula was asked to testify from a police report that contained information that was clearly outside his firsthand knowledge. The record reveals that the police report sought to be introduced by the defendants through Stachula was not a report of Stachula's personal findings, but was rather a compilation of information gathered by both Stachula and his partner from a multitude of sources. Stachula could not determine whether the information (sought to be introduced by the defendants) was gathered from Dorenzo, from hospital personnel, from other drivers at the scene, from people he called on the phone, or from other drivers at the hospital. In Stachula's own words, the police report in question was "pieced together from all the sources." Furthermore, Stachula's partner was never called to testify even though he admittedly assisted in preparing the report. Under these circumstances, we agree with the trial court that the police report constituted inadmissible hearsay. Accord, *People v. Andrews* (1981), 101 Ill. App. 3d 808, 811, 428 N.E.2d 1048; *People v. Colon* (1974), 20 Ill. App. 3d 858, 314 N.E.2d 664.

### III

■■ The third argument raised by the defendants concerns a night manager's report compiled by a Marriott employee. The report was apparently a summary of the events which occurred on the night of the accident, including facts pertaining to the accident. Although the defendants admit that the report at one time existed, they were subsequently unable to produce a copy of the report when requested to do so. The defendants maintain that the trial court erred in giving the instruction in light of the fact that Roeseke presented no evidence that the report was wilfully withheld or deliberately destroyed.

The trial court tendered an instruction tailored after IPI Civil 2d No. 5.01, which essentially stated that the jury could infer that the evidence contained in the night manager's report was adverse to the defendants.

Whether to give this instruction is a matter within the sound discretion of the trial court and is subject to reversal only when a clear abuse of discretion appears in the record. (*Tuttle v. Fruehauf Division*

*of Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 462 N.E.2d 645.) The instruction should be given only when a foundation is presented which suggests that: (1) the evidence in question was under the control of the party and could have been produced with the exercise of due diligence; (2) the evidence was not equally available to the adverse party; (3) a reasonably prudent person under the same or similar circumstances would have produced the evidence if he believed it would have been favorable to him; and (4) there was no reasonable excuse for the failure to produce the evidence. *Wetherell v. Matson* (1977), 52 Ill. App. 3d 314, 367 N.E.2d 472.

■■ In the present case, we cannot find, based on the record before us, that the trial court abused its discretion in tendering the instruction regarding the night manager's report. At trial, Roeseke presented evidence which satisfied each of the foundational requirements: (1) the report was at one time in the defendants' possession and was regularly prepared and safeguarded; (2) the report was not equally available to Roeseke; (3) a reasonable person would have produced the report if it contained information favorable to him; and (4) the defendants presented no reasonable excuse for the failure to produce the document. Therefore, it was within the discretion of the trial court to tender the instruction.

## IV

■■ Lastly, the defendants contend that the jury's finding that Roeseke was 33% negligent was against the manifest weight of the evidence.

A jury's verdict assessing a degree of comparative fault to the plaintiff will not be set aside unless that verdict is against the manifest weight of the evidence. *Bofman v. Material Service Corp.* (1984), 125 Ill. App. 3d 1053, 466 N.E.2d 1064.

In the case at bar, the record set forth above reveals that the jury's verdict finding Roeseke to be 33% at fault was not against the manifest weight of the evidence.

Conclusion

Accordingly, for the reasons set forth above, we affirm the jury's verdict in favor of Roeseke and against the defendants.

Affirmed.

McMORROW, P.J., and JOHNSON, J., concur.